DAVID TEASLEY, Plaintiff v. THEODIS BECK, Secretary of the North Carolina Department of Correction, in his official capacity, and JUANITA BAKER, Chairman of the North Carolina Post-Release Supervision and Parole Commission, in her official capacity; and ELBERT BUCK, and CHARLES L. MANN, Sr., Members of the North Carolina Post-Release Supervision and Parole Commission, in their official capacities, Defendants

ODELL CLINTON BATES, Plaintiff v. THEODIS BECK, Secretary of the North Carolina Department of Correction, in his official capacity, and JUANITA BAKER, Chairman of the North Carolina Post-Release Supervision and Parole Commission, in her official capacity; and ELBERT BUCK, and JEWYL DUNN, Members of the North Carolina Post-Release Supervision and Parole Commission, in their official capacities, Defendants

No. COA02-212

(Filed 31 December 2002)

**1. Appeal and Error—mootness-issue evading review and capable of repetition**

A case concerning the calculation of parole eligibility was reviewed even though a plaintiff had become eligible for parole because it was capable of repetition, yet evaded review.

## 2. Probation and Parole—eligibility dates—life sentences—gain and merit time

Plaintiffs' parole eligibility dates for life sentences under the Fair Sentencing Act were calculated correctly, and the trial court erred by concluding otherwise, where defendants applied good behavior time reductions ("good time") to plaintiff's life sentences but not gain and merit time (awarded for work and program participation). Some aspects of the statutory parole scheme are ambiguous and deference must be given to reasonable agency interpretation.

## 3. Probation and Parole—eligibility date—time credits—consecutive sentences

The Department of Correction's application of time credits to a Fair Sentencing Act burglary sentence served consecutively with a life term did not violate statutory and case law prohibitions on "paper parole" (whereby inmates serving consecutive sentences are required to be paroled from the first sentence before beginning the second for purposes of determining parole eligibility).

Appeal by defendants from order entered 18 September 2001 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 29 October 2002.

*George B. Currin, for plaintiffs-appellees.*

*Attorney General Roy Cooper, by Assistant Attorney General Elizabeth F. Parsons, for the State.*

BRYANT, Judge.

Theodis Beck, Secretary of the North Carolina Department of Corrections (the Department); Juanita Baker, Chairman of the North Carolina Post-Release Supervision and Parole Commission (Parole Commission or Commission); and other members of the Commission so designated (collectively defendants) appeal the trial court's order granting declaratory judgment in favor of David Teasley and Odell Clinton Bates (collectively plaintiffs).

Plaintiff Teasley pled guilty to two Class H felonies. On 14 September 1992, Teasley was sentenced pursuant to the "Fair Sentencing Act (the FSA or the Act)," N.C.G.S. §§ 15A-1340.1 to -1340.7

(1988) (repealed effective 1 October 1994), as a habitual felon, and received a Class C felony life sentence.

On 16 October 1989, plaintiff Bates pled guilty to one count each of second-degree murder, a Class C felony, and first-degree burglary. Bates was sentenced, also under the FSA, to life imprisonment for the second-degree murder conviction and a fifteen-year consecutive sentence for his first-degree burglary conviction.

For the purpose of determining plaintiffs' parole eligibility dates, the minimum term of imprisonment for their life sentences was twenty years. Plaintiffs' life sentences were then reduced to ten years, based upon credits for good behavior at a rate of one credit per day of incarceration without a major infraction.

The Parole Commission further reduced Bates' parole eligibility date by only those gain and/or meritorious time credits earned during the pendency of his burglary term. In so doing, the Commission first reduced Bates' burglary sentence to seven and one-half years based upon accumulated good-time credits, then subtracted from the burglary sentence only those gain and/or meritorious time credits earned while serving the last seven and one-half years of his total sentence. In other words, to determine his parole eligibility date, Bates would serve the first ten years of his sentence and then the seven-and-one-half years, minus any gain and/or merit time earned during the burglary sentence. As to both Teasley and Bates, no gain and/or merit time was applied to reduce their life terms.

Teasley and Bates filed separate actions for declaratory relief requesting that the court determine whether, based upon certain Department regulations, gain and/or meritorious time credits should apply to alter the parole eligibility date of their life sentence terms. In the alternative, Bates requested that the court declare him eligible for a reduction in his sentence for good time, gain time and meritorious time earned during his entire incarceration. Plaintiffs' actions were subsequently consolidated for a bench trial.

On 18 September 2001, the trial court concluded that pursuant to the Department's regulations governing "sentence reduction credits," inmates serving life sentences for Class C felonies were eligible to reduce their imprisonment terms by good, gain and meritorious time credits earned during their incarcerations. The trial court further concluded that for purposes of determining Bates' parole eligibility date,

Bates was entitled to a reduction in his sentence by all gain and/or meritorious time credits earned during the pendency of his entire incarceration. Defendants now appeal.

The dispositive issues on appeal are: I) whether the Department's "sentence reduction credit" regulations apply to inmates serving Class C life sentences for the purpose of determining their parole eligibility dates; and, if not, II) whether the Commission erred in its practice of applying gain and meritorious time credits to sentences running consecutively to a life term.

[1] Preliminarily we note that plaintiff Teasley obtained eligibility for parole on 26 August 2002, and therefore, any issues of parole eligibility with regard to Teasley are moot. *Crumpler v. Thornburg*, 92 N.C. App. 719, 723, 375 S.E.2d 708, 711 (1989). Nonetheless, we find the present action " 'capable of repetition, yet evading review,' " *id.* (citation omitted), and therefore, must review it even though the action is moot.

## Background

We begin our discussion with an overview of the Department's structure and the statutes and rules giving rise to this appeal. As noted *supra*, plaintiffs were sentenced pursuant to the FSA, which has subsequently been superseded by the Structured Sentencing Act, effective on or after 1 October 1994.[1] Accordingly, our discussion in the case *sub judice* is limited to those statutes and regulations that are part of and parcel to the FSA.

The Parole Commission, as its name indicates, is the independent agency within the Department that is responsible for releasing offenders eligible for parole. The Commission consists of one Chairman and two other members, all appointed by the Governor. The Secretary of the Department is also appointed by the Governor, but, unlike the Commission, has no authority over parole eligibility. Rather, the Secretary has the sole authority over the unconditional release of offenders.

---

1. Incident to the passage of the Structured Sentencing Act, several of the North Carolina General Statutes at issue in the present action were repealed or amended. The following statutes applicable to plaintiffs were repealed, effective 1 January 1995: N.C.G.S. §§ 14-1.1 (1986) (defining classes of felonies) and 148-13(c), (d) (1987) (governing gain time credits). The following relevant statutes have since been amended: N.C.G.S. §§ 14-52 (1986) (defining punishment for burglary) and 15A-1355(c) (1988) (calculating terms of imprisonment). N.C.G.S. § 15A-1340.7(a) (1988) (governing credits for good behavior) was repealed effective 1 October 1994.

Class C felonies may be punishable by life imprisonment. N.C.G.S. § 14-1.1(a)(3). Prisoners sentenced under the FSA are "eligible for release on parole only upon completion of the service of th[e] minimum term *or one fifth of the maximum penalty* allowed by law . . . whichever is less, *less any credit allowed under G.S. 15A-1355(c)*." N.C.G.S. § 15A-1371(a) (2001) (emphasis added). One fifth of a life term is twenty years. *Id.*

The statutes at issue in the present appeal are provided below in relevant part. N.C.G.S. § 15A-1355(c), entitled "Credit for Good Behavior," states:

> The Department of Correction and jailers . . . *must* give credit for good behavior toward service of a prison or jail term imposed for a felony that occurred on or after the effective date of Article 81A, as required by G.S. 15A-1340.7. The provisions of this subsection do not apply to persons convicted of Class A or Class B felonies . . . . The Department of Correction and jailers *may* give time credit toward service of other prison or jail terms imposed for a felony or misdemeanor, according to regulations issued by the Secretary of Correction as provided by G.S. 148-13. The Department of Correction *may* give credit toward service of the maximum term and any minimum term of imprisonment and toward eligibility for parole for allowances of time as provided in rules and regulations made under G.S. 148-11 and 148-13.

N.C.G.S. § 15A-1355(c) (emphasis added).

Section 15A-1340.7 provides:

> (a) . . . Credit toward the service of the term *shall* be given for time already served . . . , and good behavior in prison or jail as provided by subsection (b) of this section, *except that a life term imposed for a Class C felony shall not be subject to subsection (b) of this section but shall be subject to G.S. 148-13(b) for the purposes of good time and gain time deductions.* . . .
>
> (b) A prisoner committed to the Department of Correction or a jail to serve a sentence for a felony shall receive credit for good behavior at the rate of one day deducted from his prison or jail term for each day he spends in custody without a major infraction of prisoner conduct rules.

N.C.G.S. § 15A-1340.7 (emphasis added).

Section 148-13 states:

(b) With respect to prisoners who are serving prison or jail terms for offenses not subject to Article 81A of Chapter 15A of the General Statutes and prisoners serving a life term for a Class C felony, the Secretary of Correction may, in his discretion, issue regulations regarding deductions of time from the terms of such prisoners for good behavior, meritorious conduct, work or study, participation in rehabilitation programs, and the like.

(c) With respect to all prisoners serving prison or jail terms for felonies that occurred on or after the effective date of Article 81A of Chapter 15A of the General Statutes, the Secretary of Correction and local jail administrators must grant credit toward their terms for good behavior as required by G.S. 15A-1340.7. The provisions of this subsection shall not apply to persons convicted of Class A or Class B felonies or persons sentenced to a life term for a Class C felony.

(d) With respect to prisoners serving prison or jail terms for felonies that occurred on or after the effective date of Article 81A of Chapter 15A, the Secretary of Correction shall issue regulations authorizing gain time credit to be deducted from the terms of such prisoners, in addition to the good behavior credit authorized by G.S. 15A-1340.7. Gain time credit may be granted for meritorious conduct and shall be granted for performance of regular work and regular participation in study, training, work release, and other rehabilitative programs inside or outside the prison or jail. . . .

N.C.G.S. § 148-13(b)-(d).

In conjunction with the FSA, the Secretary promulgated regulations concerning the grant of "sentence reduction credits." 5 NCAC 2B .0110, *et seq.* (Supp. Jan. and Sept. 1995) (effective date 1 February 1995). According to these regulations, "sentence reduction credits" are "[t]ime credits applied to an inmate's sentence that reduce the amount of time to be served," including good, gain, and meritorious time. 5 NCAC 2B .0110(6). Good time is "credit for good behavior at the rate of one day deducted from an eligible inmate's sentence for each day he spends in custody without a major infraction of prisoner conduct rules." 5 NCAC 2B .0110(1). Gain time is "credit for participation in work and program activities," 5 NCAC 2B .0110(2), and meritorious time is credit awarded "for acts of exemplary conduct or work under extraordinary conditions," 5 NCAC 2B .0110(5).

In summary, the FSA provided that a prisoner sentenced to a life sentence for a Class C felony becomes parole eligible after a statutorily-mandated twenty-year period. N.C.G.S. § 15A-1371(a). The Department must give credit for good behavior pursuant to N.C.G.S. § 15A-1355(c) and as required by N.C.G.S. § 15A-1340.7. N.C.G.S. §§ 15A-1340.7, -1355(c). Section 15A-1340.7 directs that life terms for Class C felonies are subject to § 148-13(b), for purposes of determining whether, if at all, good and gain time credits may be applied such that the statutorily-mandated twenty-year period may be reduced.

Section 148-13(b) provides that the Secretary may issue regulations governing deductions for good, gain or meritorious time for those convicted pursuant to the FSA but not to Class A and B life sentences. N.C.G.S. § 148-13(b). The paramount question remains: what, if any, is the effect of the "sentence reduction credit" regulations on plaintiffs' parole eligibility dates.

### Standard of Review

"The standard of review of a judgment rendered under the declaratory judgment act is the same as in other cases." *Miesch v. Ocean Dunes Homeowners Assn.*, 120 N.C. App. 559, 562, 464 S.E.2d 64, 67 (1995) (citing N.C. Gen. Stat. § 1- 258). Thus, in a bench trial, the court's findings of fact are conclusive, while its conclusions of law are reviewable *de novo*. *Browning v. Helff*, 136 N.C. App. 420, 423, 524 S.E.2d 95, 98 (2000).

### I.

[2] We must first determine whether defendants erred in calculating the parole eligibility date on plaintiffs' life sentences. Resolution of this issue depends upon the accuracy with which defendants interpreted the relevant statutory scheme and related regulations. In examining whether an agency erred in interpreting a statute it administers, "an appellate court employs a *de novo* review." *County of Durham v. North Carolina Dep't of Env. & Natural Resources*, 131 N.C. App. 395, 396, 507 S.E.2d 310, 311 (1998) (citation omitted). Legislative intent controls the meaning of statutes. *Francine Delany New School for Children, Inc., v. Asheville City Bd. of Educ.*, 150 N.C. App. 338, 345, 563 S.E.2d 92, 97 (2002) (citing *Brown v. Flowe*, 349 N.C. 520, 507 S.E.2d 894 (1998)). "To determine legislative intent, a court must analyze the statute as a whole, considering the chosen words themselves, the spirit of the act, and the objectives the statute seeks to accomplish." *Brown*, 349 N.C. at 522, 507 S.E.2d at 895 (citation omitted). "Statutes on the same subject matter must be con-

strued together and harmonized to give effect to each." *Delany*, 150 N.C. App. at 345, 563 S.E.2d at 97 (citation omitted). Where statutes are "silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837, 843, 81 L. Ed. 2d 694, 703 (1984).

Accordingly, while the trial court's conclusions of law do not bind us here, where a statute at issue is silent or ambiguous, we must give deference to the agency " 'so [ ] long as the agency's interpretation is reasonable and based on a permissible construction of the statute.' " *Durham*, 131 N.C. App. at 397, 507 S.E.2d at 311 (alteration in original) (quoting *Carpenter v. N.C. Dept. of Human Resources*, 107 N.C. App. 278, 279, 419 S.E.2d 582, 584 (1992)).

In reviewing the relevant statutes, we first find certain aspects of the statutory scheme unclear or ambiguous. Section 1533(c) states that those inmates serving Class C life sentences *must receive* credit for "good behavior" toward their parole eligibility date as required by section 1340.7. However, section 1340.7(a) states that section 1340.7(b), the subsection citing the method for calculating credits for "good behavior," does not apply to those inmates serving Class C life sentences for the purpose of "good time and gain time" deductions. Rather, section 1340.7(a) directs that credits for "good time" are to be granted to inmates based upon section 148-13(b). Section 148-13(b), however, does not mandate that the Secretary pass regulations for deducting time for "good behavior . . . and the like."

In resolving this ambiguity, Parole Commission Chairperson, Juanita Baker, stated in an affidavit that the Commission believed section 15A-1355(c) allowed the twenty-year service requirement for those inmates serving Class C life sentences "to be reduced by day-for-day good time to ten years." According to Baker, at the time of her affidavit, the Commission had reduced the sentences of approximately 963 inmates based upon credits for good behavior.

We conclude that the Commission's own interpretation of the relevant yet ambiguous statutes is reasonable. Under section 1355(c), granting deductions in Class C life sentences for good behavior was mandatory, and it was within the Commission's authority to carry out this statutory mandate. This is true, whether or not the Secretary had in his (or her) discretion granted by section 148-13(b) promulgated rules dictating the method by which the Commission was to apply those credits. As such, both Teasley and Bates were granted good-time credits to reduce parole eligibility on their

Class C life sentences by day-for-day credits to within ten years of their conviction dates.

Next, we examine what appears to be unambiguous within the relevant statutory scheme. Unlike good time credits, the application of gain and meritorious time credits (time for "meritorious conduct, work or study, participation in rehabilitation programs, and the like") in determining the parole eligibility date of those serving Class C life terms was not statutorily mandated by section 1355(c) or, for that matter, any other statute. The Commission could not apply gain and meritorious time credits unless the Secretary issued regulations dictating such action pursuant to his or her discretionary authority per subsection 148-13(b).

Furthermore, subsection 148-13(b) stands in stark contrast to subsections 148-13(c), (d). Subsections (c) and (d) *require* the Secretary to issue regulations for the deduction of both good and gain time credits from the sentences of those prisoners serving "term of year" sentences, while expressly excluding those serving life sentences. There is a clear disjunctive between subsections (b) and (c), (d) under section 148-13: section 148-13 binds the Secretary as to subsections (c), (d) but gives discretion as to subsection (b).

This leads us to the crucial question: under which of the above stated statutes were the Secretary's "sentence reduction credit" regulations promulgated. If they were passed pursuant to § 148-13(c), (d), as defendants contend, then the regulations apply to the reduction of eligible inmates' sentences for the purpose of determining unconditional release dates. Thus, given the present situation, because those inmates serving life sentences are not entitled to unconditional release, plaintiffs' parole eligibility date could not be further reduced based upon gain or meritorious time earned while incarcerated. However, if the regulations were passed under § 148-13(b), as plaintiffs contend, then they apply to parole eligibility dates, such that plaintiffs' sentences would be further reduced by the gain and meritorious time earned while incarcerated.

We believe that this question is best answered by giving deference to the Department's interpretation of its own regulations. For it is well established that an agency's interpretation of its own regulations are to be afforded "due deference by the courts unless it is plainly erroneous or inconsistent with the regulation[s]." *Pamlico Marine Co., Inc. v. N.C. Dept. of Natural Resources,* 80 N.C. App. 201, 206, 341 S.E.2d 108, 112 (1986) (citation omitted).

Theodis Beck, the Secretary at the time of this appeal, stated in an affidavit that he did not possess the authority to consider inmates for parole, and that 5 N.C. Admin. Code 2B .0112 [Policy and Procedures for computing gain time] governs only unconditional release from prison, something within his statutory authority. According to Beck, he never instructed the Commission to apply gain time to reduce the parole eligibility service requirements of inmates serving Class C life sentences. Chairperson Baker also noted that in her regular consultations with past and present Secretaries, they never informed her that the Commission erred in failing to apply gain or merit time to the sentences of those prisoners serving Class C life sentences.

Furthermore, Andrew Terrell, a thirty-year Commission employee holding positions as the Commission's parole analyst, chief of staff, and statistician, testified in the action below that the Secretary had not issued any regulations directing the Commission to grant inmates serving Class C life sentences gain time credits. According to Terrell, the Commission had never followed Subchapter 2B in calculating parole eligibility, and did not have the authority to apply gain time credits.

Plaintiffs argue that the "sentence reduction credit" regulations apply to inmates serving Class C life sentences because while the regulations expressly exclude Class A and Class B felons, *see* 5 NCAC 2B .0111(4), .0112(4), they do not exclude those serving Class C life sentences. This is admittedly plaintiff's strongest argument. However, we find that the failure to exclude inmates serving Class C life sentences simply creates another ambiguity in the regulation for which we must defer to the agency. The Department insists that the regulations were promulgated under subsections 148-13(c), (d) and not (b). These subsections are clear: 148-13(c), (d) does not apply to any inmate serving a life sentence, whether it is Class A, B, or C life sentence. Furthermore, unlike all "Class A and Class B felons," not all Class C felons are subject to life sentences. *See* N.C.G.S. § 14-1.1(a)(3) (stating that sentences for Class C felonies may be punishable by life imprisonment, a term of up to fifty years, a fine, or both a term and a fine). If the regulation excluded Class A, B, and C felons, it would certainly contradict N.C.G.S. § 148-13(c), (d), by which inmates serving "term of years" sentences *must* receive gain and/or meritorious time credits.

Plaintiffs also argue that the regulations apply because Subchapter 2B defines the term "parole eligibility date." *See* 5 NCAC

2B .0110(10). We disagree. The regulations define "parole eligibility date" as "[t]he date, if any, provided to the Department of Correction by the Parole Commission as the date an inmate becomes eligible for parole." *Id.* This is the only mention of parole eligibility in the regulations. The regulations specify that they are to be applied to the "parole eligibility date." If anything, the above-noted definition affirms the distinction between "parole eligibility dates," which is provided by the Commission, and "sentence reduction," which is regulated by the Secretary.

Finally, plaintiffs contend that if gain and meritorious time do not apply to Class C life sentences, there would be no need for the Department to allow those prisoners serving such sentences to accumulate gain and merit time, or for the Department to keep records of that accumulation, as is its practice. However, Terrell explained that these records are kept because prisoners sentenced to life can have their sentences commuted to a term of years, at which point gain and meritorious time must be applied, per section 148-13(d). We are persuaded that Terrell's reasoning concerning the regulations, the other above-noted explanations, and defendants' interpretation of the regulations in their entirety are not erroneous or inconsistent with the letter of the regulations. In so finding, we conclude that the Secretary promulgated the "sentence reduction credit" regulations under section 148-13(c), (d) to apply to the unconditional release date of those inmates serving "term of years" sentences. The Secretary has not, however, exercised its authority under section 148-13(b) to pass regulations for the application of good, gain, and meritorious time credits for those serving life sentences. *See Price v. Beck*, 153 N.C. App. 763, 768, 571 S.E.2d 247, 250 (stating, in dicta, that "[t]he Secretary has not issued regulations regarding deductions of time for Class A, B, and C felons"), *disc. review denied*, 356 N.C. 615, 575 S.E.2d 26 (2002). The trial court, therefore, erred in concluding otherwise.

## II.

[3] We next address whether the Department's practice of applying gain and merit time to a sentence served consecutive to a life term is a permissible practice. Bates argued and the trial court concluded that this practice contravenes N.C.G.S. § 15A-1354(b) (2001) and our holding in *Robbins v. Freeman*, 127 N.C. App. 162, 487 S.E.2d 771 (1997), prohibiting the practice of "paper parole." We disagree.

In *Robbins*, the plaintiff was incarcerated for, *inter alia*, three counts of robbery with a deadly weapon, in which one sentence ran

consecutive to the other two. In calculating the plaintiff's parole eligibility date, the Department employed a practice known as " 'paper parole,' whereby an inmate serving consecutive sentences for armed robbery is required to be paroled from the first sentence to a second consecutive sentence before being treated as having begun service of the second sentence for purposes of determining parole eligibility." *Id.* at 163, 487 S.E.2d at 772.

Our Court held that the practice of "paper parole" was impermissible because according to N.C.G.S. § 15A-1354(b) (1985) the Department must treat defendants as if they have been committed for single terms. *Id.* at 164-65, 487 S.E.2d at 773. Accordingly, the *Robbins* Court concluded that the plaintiff's sentences should be aggregated before determining his parole eligibility date. *Id.* at 165, 487 S.E.2d at 773.

*Robbins* is distinguishable from the present action, in that *Robbins* concerned an inmate serving three sentencing terms, each for the same offense, and to each the same calculations of time credits applied. In contrast, Bates' consecutive term followed a life sentence, for which the accumulation of time credits differed dramatically. Also, in calculating Bates' parole eligibility date, defendants treated the accumulation of time for each sentence differently, but not the sentences themselves. Unlike the defendants in *Robbins*, here, defendants properly aggregated the sentencing terms after the proper amounts of accumulated time credits were applied to both. The practice employed in the case *sub judice* simply does not run afoul of the practice prohibited by *Robbins*.

Furthermore, this Court recently affirmed the validity of this practice to a similar situation in *Price v. Beck*, 153 N.C. App. 763, 571 S.E.2d 247. In *Price*, the plaintiff was sentenced to life imprisonment for a Class B felony and to a consecutive term for second-degree kidnapping. *Id.* at 765, 571 S.E.2d at 249. The *Price* plaintiff brought suit to challenge the defendants' calculation of his parole eligibility, arguing, *inter alia*, that the Commission erred in failing to apply time credits to his life sentence and in retroactively applying *Robbins* to determine his parole eligibility.

The *Price* defendants applied *Robbins* to determine the plaintiff's parole eligibility by first determining the minimum time allowable on the plaintiff's life sentence, which was twenty years. The defendants took the good, gain, and meritorious time credits gained by plaintiff and applied those to the minimum time allowable on his consecutive

sentence, but not the life sentence. The defendants then added the resulting two sentences together to determine the plaintiff's parole eligibility date. *Id.* In reviewing the above-noted practice, our Court concluded that because no time credits applied to the *Price* plaintiff's life sentence, the Commission did not err in applying time credits to the consecutive sentence but not the life sentence. *Id.* at 767-68, 571 S.E.2d at 250-51.

Although neither the issues raised in, nor the facts presented by *Price* are completely analogous, *Price* indicates our Court's approval of the process employed by the Commission in the present case. Similar to its practice in *Price*, the Commission applied all time credits available to plaintiff Bates' life sentence and all time credits available to his burglary sentence and then aggregated those sentences to determine his parole eligibility date. Under *Price*, such practice does not run afoul of and is even in accordance with the *Robbins* holding that sentences must be treated in the aggregate. Thus, the trial court erroneously concluded that the practice employed by defendants *sub judice* was impermissible and erred in granting Bates' declaratory relief on that basis.

## Conclusion

For the reasoning stated herein, we reverse the trial court's order granting declaratory judgment in plaintiffs' favor.

Reversed.

Judges GREENE and MARTIN concur.