CALABRIA, Judge.
A contract dispute between JPG, Inc. ("JPG") and Dick Beck Professional Marketing, Inc. ("DBP") centered on whether the company's Operating Agreement (the "agreement") required appraisal of company real estate to be limited to its "use in the `cattle business.'" We find the clear language of the agreement required appraisal of the real estate to be based on "gross fair market value" without limitation, and we reverse the trial court's decision.
On 8 January 1997, JPG and DBP, the sole members of Springfield Angus, LLC (the "company"), entered into the agreementand formed the company. The agreement authorizes the company, under North Carolina General Statutes Chapter 57C, "to engage in any lawful business including the ownership and operation of a cattle business" on a 370.5-acre tract of real estate in Franklin County (the "property"). Paragraph 21(b) of the agreement gives JPG the option "to acquire DBP's interest in the Company" prior to 31 December 2004 if JPG determines, in good faith, DBP's continued participation as a member impedes the success of the company. Paragraph 21(b) further provides, "The purchase price of DBP's interest shall be equal to its capital account balance, adjusted for the gross fair market value of Company assets in accordance with the provision of paragraph 3(e). . . ."
In pertinent part, paragraph 3(e) states:
If the Managers [disagree] regarding the gross fair market value of the Company assets, such value shall be determined by appraisal as follows. With respect to the Company's real property, the Managers shall select two qualified appraisers, [who shall] appoint a third qualified appraiser, and the three appraisers separately shall appraise the gross fair market value of such real estate. The average of the two appraisals . . . closest in amount shall be binding upon the parties. . . . The Managers shall agree on appraisers to appraise the gross fair market value of the Company's cattle, equipment, and other assets. . . . For purposes hereof, a qualified appraiser shall be any entity or person who (i) regularly engages within the local market area for real estate and equipment and in the relevant market for cattle, as shall be determined reasonably and in good faith within the discretion of the Managers, in the valuation of assets of the kind and nature owned by the Company, and (ii) holds themselves out as being in such business and qualified to make such valuation.
In a letter dated 13 September 2002, JPG informed DBP that it was exercising its option under paragraph 21(b) to purchase DBP's interest and had chosen a "qualified appraiser" per the terms of paragraph 3(e). Further, JPG requested DBP select a "qualified appraiser" so that the two appraisers could "select a third . . . and appraise the property as a cattle farm as required by the Operating Agreement." In a letter dated 27 September 2002, DBP named its "qualified appraiser," stated its appraiser would "take into account the highest and best uses of the property," and contended "[t]he Operating Agreement does not require differently."
On 30 September 2002, JPG filed a complaint in Wake County Superior Court requesting "a declaratory judgment that any appraiser selected by any party as per the terms of [the agreement] . . . appraise the real property owned by the [company] only as an ongoing cattle farm. . . ." The trial court's decision required the appraisers to conduct the appraisals
with due consideration given by the appraisers to those factors which form the basis of their respective qualifications, that is, the local market for real estate and the equipment associated with a cattle farming operation, as well as the relevant market area for cattle . . . so as to provide a gross fair market value of the Company's real estate for use in the "cattle business."
On 2 May 2003, DBP filed notice of appeal.
The sole issue on appeal is whether the agreement requires that the property be appraised as "real estate for use in the `cattle business'" or at its "highest and best uses." Appellate review of a declaratory judgment "'is the same as in other cases.' Thus, in a bench trial, the [trial] court's findings of fact are conclusive, while its conclusions of law are reviewable de novo." Teasley v. Beck, 155 N.C. App. 282, 288, 574 S.E.2d 137, 141 (2002), disc. rev. denied, 357 N.C. 169, 581 S.E.2d 755 (2003) (citation omitted).
DBP asserts the trial court erred in limiting the valuation of the property to cattle farming applications. DBP argues the parties' intent can be discerned by reference to their use of the term "gross fair market value," which requires appraisal of the property at its "highest and best uses." We find merit in this argument.
A court is required "to interpret a contract according to the intent of the parties to the contract, unless such intent is contrary to law." Bueltel v. Lumber Mut. Ins. Co., 134 N.C. App. 626, 631, 518 S.E.2d 205, 209 (1999). "If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract[,]" Walton v. City of Raleigh, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996), and "the court is obliged to interpret the contract as written, and cannot, under the guise of construction, `reject what parties inserted or insert what parties elected to omit.'" Corbin v. Langdon, 23 N.C. App. 21, 25, 208 S.E.2d 251, 254 (1974) (quoting Weyerhaeuser Co. v. Light Co., 257 N.C. 717, 719, 127 S.E.2d 539 (1962)) (citation omitted).
The commonly accepted definition of "fair market value" is "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-lengthtransaction." Black's Law Dictionary 1587 (8th ed. 2004). See also Becker v. Becker, 127 N.C. App. 409, 414, 489 S.E.2d 909, 913 (1997) (defining "fair market value" similarly in cases of equitable distribution); Marina Food Assoc., Inc. v. Marina Restaurant, Inc., 100 N.C. App. 82, 94, 394 S.E.2d 824, 831 (1990) (defining "fair market value" similarly in cases of conversion). In determining fair market value, the inquiry "' in a sale of property between private parties . . . must be, what is the property[,] [in its present state,] worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted - that is to say, what is it worth from its availability for valuable uses.'" Barnes v. Highway Commission, 250 N.C. 378, 387, 109 S.E.2d 219, 227 (1959) (quoting Power Co. v. Power Co., 186 N.C. 179, 183-84, 119 S.E. 213, 215 (1923) (stating the determination of fair market value in condemnation actions is the same as the determination in the sale of property between private parties)).
We also find persuasive that Unif. Standards of Prof'l Appraisal Practice, Standards Rule 1-3 (2004) provides:
When the value opinion to be developed is market value . . . an appraiser must[,] [unless otherwise agreed to by the parties]: (a) identify and analyze the effect on use and value of existing land use regulations, reasonably probable modifications of such land use regulations, economic supply and demand, the physical adaptability of the real estate, and market area trends; and
(b) develop an opinion of the highest and best use of the real estate.
(Emphasis added). We also note N.C. Admin. Code tit. 21, r. 57A.0501(a) (June 2004) requires that "state-licensed and state-certified real estate appraiser[s] . . . comply with [the] appraisal practice standards known as the `Uniform Standards of Professional Appraisal Practice. . . .'"
In the instant case, paragraph 21(b) of the agreement equates "[t]he purchase price of DBP's interest . . . [to DBP's] capital account balance, adjusted for the gross fair market value of Company assets in accordance with the provision of paragraph 3(e). . . ." Paragraph 3(e) provides that the "three [duly appointed] appraisers separately shall appraise the gross fair market value of [the company's] real estate." The agreement contains no limitation on or departure from the commonly accepted definition of "gross fair market value." Thus, the property's worth on the open market must be appraised "not merely with reference to [its present use as a cattle farm], but with reference to . . . its availability for valuable uses[,]'" Barnes, 250 N.C. at 387, 109 S.E.2d at 227, necessarily encompassing consideration of its "highest and best uses."
Nonetheless, JPG argues the "gross fair market value" of the property should reflect its use as a cattle farm based upon the agreement's definition of a "qualified appraiser" and the intention of the parties, looking at the agreement as a whole. We disagree. First, the agreement's definition of a "qualified appraiser" limits the parties' choice of appraisers to those with the required experience for each type of company asset but does not limit themethod used or valuation reached by such appraisers. Second, as discussed above, nothing in the agreement limits the explicit term "gross fair market value," and this Court may not insert such a limitation "under the guise of [contract] construction." Corbin, 23 N.C. App. at 25, 208 S.E.2d at 254. Moreover, to the extent JPG's argument has merit, it would merely create an ambiguity, which must be construed against JPG as drafter of the contractual language giving rise to the ambiguity. Reichhold Chems., Inc. v. Goel, 146 N.C. App. 137, 153, 555 S.E.2d 281, 291 (2001).
Reversed.
Judges WYNN and STEELMAN concur.
Report per Rule 30(e).