ILEAN MEDFORD McDONALD, Plaintiff v. HERMAN J. MEDFORD, Defendant

No. 9230SC747

(Filed 17 August 1993)

**Husband and Wife § 25 (NCI4th)— post-nuptial agreement—effect on entireties property originally owned by husband—directed verdict improper**

In an action to partition property owned by defendant prior to the parties' marriage and subsequently conveyed by him to himself and plaintiff, the trial court erred in directing verdict for plaintiff, defendant's former wife, where there was evidence that plaintiff had her attorney prepare a post-nuptial contract which purportedly established the respective parties' property interests owned by them prior to the marriage; pursuant to the contract, defendant was to retain sole ownership of any property he then owned; the parties separated two months after execution of the agreement; and for eleven years following execution of the contract the conduct of the parties would allow the reasonable inference that plaintiff intended to, and did in fact, disavow any ownership in the subject property which the parties had held under an estate by the entireties, and granted defendant the right to ownership and enjoyment of that property "without interference by or from the Wife."

**Am Jur 2d, Husband and Wife §§ 316-319.**

Appeal by respondent from judgment entered 3 February 1992 in Jackson County Superior Court by Judge Charles C. Lamm, Jr. Heard in the Court of Appeals 9 June 1993.

On 14 December 1989, plaintiff filed a special proceeding pursuant to the provisions of N.C. Gen. Stat. § 46-1, seeking a partition of property consisting of a .41 acre lot (the subject property) located in Sylva, North Carolina, in Jackson County. On 28 February 1990, defendant answered denying plaintiff's allegations, and counterclaimed seeking, *inter alia*, sole ownership of the subject property. The case was duly transferred by the clerk to the civil issue docket and came on for a jury trial in Jackson County Superior Court before Judge Charles Lamm. At the close of defendant's evidence, Judge Lamm directed a verdict in favor of plaintiff on her claim

and against defendant on his counterclaim and ordered partition. Defendant gave timely notice of appeal.

*Stephen J. Martin for plaintiff-appellee.*

*Mark R. Melrose for defendant-appellant.*

WELLS, Judge.

On appeal, defendant challenges the trial court's granting a directed verdict, dismissing his counterclaim and ordering partition. In *Shreve v. Duke Power Co.*, 97 N.C. App. 648, 389 S.E.2d 444 (1990), this Court set out the standard of judicial review of a trial court's granting of a directed verdict:

> A motion . . . for a directed verdict under N.C. Gen. Stat. § 1A-1, Rule 50(a) of the Rules of Civil Procedure, tests the legal sufficiency of the evidence to take the case to the jury and support a verdict for the [opposing party]. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E.2d 678 (1977); *see also Effler v. Pyles*, 94 N.C. App. 349, 380 S.E.2d 149 (1989). On such a motion, the [opposing party's] evidence must be taken as true and the evidence must be considered in the light most favorable to [him], giving [him] the benefit of every reasonable inference to be drawn therefrom. *Id.* A directed verdict for the [moving party] is not properly allowed unless it appears as a matter of law that a recovery cannot be had by [the opposing party] upon any view of the facts that the evidence reasonably tends to establish. *Id.*

Taken in the light most favorable to defendant, the evidence presented at trial tended to show the following.

On 1 June 1977, defendant purchased and became the sole owner of the real property in dispute, .41 acres of land with a house situated on it. The subject property was the first and only piece of real property which defendant owned during all times relevant to this lawsuit. On 13 October 1977, plaintiff and defendant were married in Jackson County. On 17 October 1977, defendant deeded the subject property to himself and plaintiff, creating an estate by the entireties in the property.

In March of 1978, plaintiff wanted to sell a piece of real estate consisting of a house and lot in Ohio which she had inherited from her previous husband. Plaintiff did not want defendant to have

any interest in the proceeds of the Ohio property sale. Plaintiff contacted her attorney and he drafted a post-nuptial agreement, which reads in pertinent part as follows:

WHEREAS, the purpose of this agreement is to establish the respective parties' property interest, both real and personal, owned by the parties prior to the marriage.

NOW THEREFORE, it is mutually agreed as follows:

1. That all property owned by the Wife prior to the marriage to the Husband shall remain and continue in the name of the Wife free and clear of any and all claims of dower, curtesy, right of survivorship, elective life estate or any other claim, vested or contingent, which the said Husband may have to such properties arising by way of the marriage of the parties.

2. The said Wife shall have, keep and retain the sole ownership, control, enjoyment of, and during her life, or by Last Will and Testament, or by any other testamentary disposition, shall have the exclusive right to dispose of any and all property, real, personal, or fixed, that she now owns or is possessed of, or has acquired or may hereafter acquire or receive, or which she had acquired or received prior to the marriage of the parties as her own absolute property without interference by or from the Husband and in like manner as if the marriage had not taken place and the said Wife had remained unmarried.

3. That in the event the Wife desires to dispose of, sell [or] convey the said property owned by the Wife, the Husband agrees to and shall execute all necessary documents in order to satisfy any purchaser that he has no claim to any interest in the property owned by Wife.

4. That if . . . the Husband shall survive the Wife, then the Husband shall not make . . . any claim . . . whatsoever in or to any part of the Wife's separate estate . . . to which the Husband as surviving spouse may be or become entitled to, but for the execution and delivery of this agreement and so that all of the property of the Wife not effectively disposed of by her during her life or by testamentary disposition, shall devolve in the same manner as if the Husband had predeceased her. The Wife

McDONALD v. MEDFORD

[111 N.C. App. 643 (1993)]

agrees that the said Husband shall have, keep and retain the sole ownership, control, enjoyment of and during his life or by Last Will and Testament or by other testamentary disposition, shall have the exclusive right to dispose of any and all property real, personal or fixed, that he now owns or is possessed of or hereafter may acquire or receive as his own absolute property without interference by or from the Wife in a like manner as if the marriage had not taken place and the Husband had remained unmarried.

5. That nothing contained in this agreement shall in any manner bar or affect the right of . . . [either party] to claim and receive any property of any nature or kind that . . . [the other party] . . . may give, devise, transfer [to him/her]. . . .

In March of 1978, while defendant was in the hospital for back problems, plaintiff informed him that she had some papers that she wanted him to sign. In an effort to induce defendant to sign the post-nuptial agreement her attorney had prepared for her, plaintiff told defendant that, if he signed the agreement, he would become the sole owner of the subject property (the .41 acres and house situated in Jackson County which the parties held at that time by estate by the entireties). Both parties knew the subject property to be the only real estate defendant had ever owned.

The next day, after defendant got out of the hospital, plaintiff had defendant accompany her to plaintiff's attorney's office where both parties signed the agreement which plaintiff's attorney had drafted. Defendant was not represented by an attorney and no negotiation over the agreement's terms ever occurred. The couple spent about five minutes at the attorney's office and plaintiff's attorney only informed defendant about parts of the agreement.

Based on plaintiff's representations, defendant was led to believe that by signing the agreement he would gain sole ownership in the subject property. Relying on plaintiff's representations, defendant executed the agreement. After the execution of the 24 March 1978 agreement, plaintiff's Ohio property was sold and defendant neither claimed nor enjoyed any interest in the proceeds from the sale. The parties were separated in May of 1978 and were divorced on 14 September 1979.

**McDONALD v. MEDFORD**

[111 N.C. App. 643 (1993)]

Since May of 1978, defendant has resided in the subject property without plaintiff, believing that he was the sole owner. Since May of 1978, defendant has paid all the mortgage payments, property taxes, insurance premiums, and maintenance and upkeep costs for the subject property, without contribution from plaintiff. Defendant has also made improvements upon the subject property. Plaintiff has not resided at the property since May of 1978 nor has she ever asserted any ownership interest in the property prior to initiating these proceedings.

Between the time at which the parties entered the 24 March 1978 agreement and the time at which plaintiff initiated these proceedings, the value of the subject property increased from approximately $24,000 to $45,000.

In 1988, defendant sent plaintiff a quitclaim deed to remove her interest from the title of the subject property, pursuant to their 24 March 1978 written agreement. Subsequent to receipt of defendant's request for a quitclaim deed, plaintiff instituted these proceedings.

Defendant correctly contends that the trial court erred in granting plaintiff's motion for a directed verdict on the basis of its conclusion that the 24 March 1978 post-nuptial agreement "was not ambiguous and did not affect the status of the parties' title to the subject real property" created by the 17 October 1977 deed, as a matter of law.

In finding and concluding that the agreement between defendant and plaintiff was free of ambiguity and entitled plaintiff to judgment, as a matter of law, the trial court overlooked basic principles of contract construction. A contract must be construed as a whole, considering each clause with reference to all other provisions and giving effect to each whenever possible by any reasonable construction. *Robbins v. C.W. Myers Trading Post, Inc.,* 253 N.C. 474, 117 S.E.2d 438 (1960). The heart of a contract is the intention of the parties as determined from its language, purposes, and subject matter and the situation of the parties at the time of execution. *Adder v. Holman & Moody, Inc.,* 288 N.C. 484, 219 S.E.2d 190 (1975).

By ruling as it did, the trial court ignored and failed to give any effect whatsoever to the following quoted portions of the con-

tract, portions on which defendant's counterclaim is predicated. The agreement's preamble states:

> WHEREAS, the purpose of this agreement is to establish the respective parties' property interest, both real and personal, owned by the parties prior to the marriage. (Emphasis supplied).

Paragraph number four of the agreement states, in pertinent part:

> The Wife agrees that the said Husband shall have, keep and retain the sole ownership, control, enjoyment of and during his life or by Last Will and Testament or by other testamentary disposition, shall have the exclusive right to dispose of any and all property real, personal or fixed, that he now owns or is possessed of or hereafter may acquire or receive as his own absolute property without interference by or from the Wife in a like manner as if the marriage had not taken place and the Husband had remained unmarried.

A plain reading of the above mentioned terms would allow the jury to find that the parties intended to include the subject property in the bargain reached by the agreement.

Another principle of contract construction overlooked by the trial court is that where the parties, through their actions, have placed a practical interpretation on their contract after executing it, the courts will ordinarily give it that construction which the parties themselves have given it before the differences between them manifested themselves and such an interpretation given by the parties prior to the controversy must be given consideration by the courts in ascertaining the meaning of the language used. *See Preyer v. Park,* 257 N.C. 440, 125 S.E.2d 916 (1962); *Goodyear v. Goodyear,* 257 N.C. 374, 126 S.E.2d 113 (1962).

The foregoing language in the agreement, considered in the context of the purposes and subject matter of the agreement, the situation of the parties at the time of the agreement, and the conduct of the parties during a period of over eleven years following the execution of the contract would allow the reasonable inference that plaintiff intended to, and did in fact, disavow any ownership in the subject property which the parties thus held under an estate by the entireties, and granted defendant the right to ownership and enjoyment of that property "without interference by or from the Wife." Should a trier of fact make such a determina-

tion, this would clearly defeat plaintiff's entitlement to partition the disputed property.

While, *prima facie*, a tenant in common is entitled, as a matter of right, to partition of the lands so that he may enjoy his share in severalty, in this State, partition proceedings have consistently been held to be equitable in nature, and partition is always subject to the principle that he who seeks it by coming into equity for relief must do equity. *Kayann Properties, Inc. v. Cox*, 268 N.C. 14, 149 S.E.2d 553 (1966). "Equity will not award partition at the suit of one in violation of his own agreement. . . . The objection to partition in such cases is the nature of estoppel." *Id.*

*Cf. Roberson v. Roberson*, 65 N.C. App. 404, 309 S.E.2d 520 (1983), *rev. denied*, 310 N.C. 626, 315 S.E.2d 691 (1984), where this Court recognized *Kayann Properties, Inc.* as standing for the rule that a co-tenant's right to partition may be estopped by an express or implied contract waiving such right, but finding no evidence of such contract in that case.

For the reasons stated, we hold that the trial court erred in granting directed verdict for plaintiff and against defendant.

The trial court's judgment is reversed and this case is remanded for a new trial.

New trial.

Judges COZORT and JOHN concur.