ALFRED C. STARLING, PLAINTIFF v. DAVID M. STILL AND THERESA F. PARKER, D/B/A/ STILL & COMPANY, DEFENDANTS

No. COA96-693

(Filed 20 May 1997)

### 1. Contracts § 47 (NCI4th)— construction of agreement— sale of accounting practice

The trial court did not err in interpreting the agreement between the plaintiff accountant and defendant accounting firm as a sale of plaintiff's accounting practice rather than a contract for personal services despite the use of contract language calling for a "servicing of accounts" where all of plaintiff's clients were to become defendant's clients; the record contained a check from defendant with the notation "1st check-buyout of practice" and a memo initialed by the parties and entitled "Items To Be Considered In Takeover Of Mr. Starling's Practice"; and it was undisputed that plaintiff's desire to retire prompted the contract.

**Am Jur 2d, Contracts §§ 336, 342-344, 350-354.**

### 2. Contracts § 78 (NCI4th)— sale of accounting practice— compliance with contract

There was no genuine issue of material fact as to plaintiff's compliance with a contract for the sale of plaintiff's accounting firm to defendants where defendants were unable to retain all of plaintiff's clients, but the undisputed evidence in the record indicated that plaintiff fulfilled his obligations to introduce his clients to defendants; therefore, the trial court properly granted summary judgment in favor of plaintiff.

**Am Jur 2d, Building and Construction Contracts §§ 41-43.**

**3. Contracts § 168 (NCI4th)— breach of contract—install-
ments—absence of acceleration clause—limited recovery**

In an action for breach of a contract for the sale of plaintiff's
accounting practice to defendants, the trial court erred by impos-
ing damages equal to the entire amount of the contract between
the parties where the purchase price was to be paid in install-
ments, the contract did not contain an acceleration clause, and
plaintiff was thus entitled to recover only the amount of the
unpaid installment.

**Am Jur 2d, Damages §§ 43 et seq.**

Appeal by defendants from order entered 9 April 1996 by Judge
Marvin K. Gray in Mecklenburg County Superior Court. Heard in the
Court of Appeals 20 February 1997.

*Bledsoe & Bledsoe, P.L.L.C., by Louis A. Bledsoe, Jr. and
Margaret M. Bledsoe, for plaintiff-appellee.*

*Harkey, Lambeth, Nystrom, Fiorella & Morrison, L.L.P., by
Philip D. Lambeth, for defendants-appellants.*

WYNN, Judge.

In early 1994, the parties to this action, all certified public
accountants, executed an "Agreement To Service Accounts" provid-
ing, *inter alia*:

WHEREAS, Owner is a Certified Public Accountant and has
an accounting practice with a number of clients which he has
serviced over the years; and,

WHEREAS, Owner is desirous of having Servicers handle the
servicing of said clients on an ongoing daily basis as required;
and,

WHEREAS, Servicers, under the name of Still & Company,
are active Certified Public Accountants and are agreeable to
servicing clients of Owner, all in accordance with the terms of the
agreement recited hereinafter;

NOW, THEREFORE, the parties, in consideration of the
premises recited above and other valuable consideration, agree
as follows:

1. Beginning November 1, 1994, Servicers agree to commence servicing clients of Owner, a list of which is herewith attached as Exhibit A. Owner will cooperate in introducing clients and assisting Servicers to cause the servicing to be as smoothly [sic] as possible. After November 1, 1994, all clients on Exhibit A will become clients of Still & Company.

2. Servicers agree to pay owner $30,000.00 for the right to service said clients of Owner, payable in twenty (20) quarterly payments of $1,500.00 each, with the first quarterly payment commencing on March 15, 1995, and a like amount each quarter thereafter with payments on June 15, September 15, December 15 and March 15 thereafter until paid in full.

3. Owner agrees not to compete with Servicers in the Charlotte area for any clients for a period of five (5) years.

. . . .

9. Except for servicing of the accounts recited herein, any and all personal investments of Owner and personal relatives are reserved by him and are understood not to become a part of this agreement.

In October 1994, plaintiff Alfred C. Starling, identified as the "Owner" under the agreement, sent a letter to his clients stating: "I have decided to turn my accounting practice over to another certified public accounting firm to service my clients in the future, while I take a semi-retired status." The letter introduced defendant David Still and informed the clients that Still & Company would now be servicing their accounts. In a follow-up letter, defendants introduced themselves, explained their qualifications and invited Mr. Starling's former clients to set up an appointment.

In March 1995, Still wrote to plaintiff informing him that Still & Company had not been successful in retaining as many of his clients as they had hoped and proposed an amendment to the payment arrangements of their agreement. Starling responded that he was unprepared to make any adjustment to their agreement, but offered to do as much as he could to help defendants keep his old accounts. The next month, defendants paid the initial $1,500 installment under the agreement. When defendants refused to make the next scheduled payment, plaintiff brought this action for breach of contract alleging that "by the terms of the Agreement and the intent and understanding of the parties, this was a sale of Plaintiff's accounting practice, par-

STARLING v. STILL

[126 N.C. App. 278 (1997)]

ticularly those clients listed and attached to the Agreement," which defendants had breached by failing to make the scheduled install-ment payment.

Defendants responded by alleging, *inter alia*, that the agreement was for personal services entitling them to rescind the unexecuted portion of the agreement, and that plaintiff breached the agreement by not introducing clients and assisting the defendants as required. In addition, defendants counterclaimed alleging that plaintiff had inten-tionally misrepresented the amount of annual billings Still & Company could expect upon taking over the servicing of plaintiff's clients.

Plaintiff moved for and the trial court granted summary judgment in his favor awarding damages of $28,500 plus interest. From that order, defendants appeal.

On appeal defendants contend that the trial court erred by grant-ing summary judgment because: (I) The contract was one for per-sonal services which defendants were entitled to rescind, rather than one for the sale of plaintiff's practice; (II) A genuine issue of material fact exists as to plaintiff's compliance with the material provisions of the contract; and (III) The trial court was without authority to accel-erate the plaintiff's damages in the absence of an acceleration clause in the contract. We agree only with defendant's final contention.

I.

[1] Defendants first contend that the parties contracted for personal services entitling them to rescind the unexecuted portion of the agreement. They argue that the express language labeling the con-tract an "Agreement To Service Accounts" controls this issue.

"An agreement should be interpreted as a whole and the meaning gathered from the entire contract, and not from particular words, phrases, or clauses." *Divine v. Watauga Hospital*, 137 F. Supp. 628, 631 (M.D.N.C. 1956). Moreover, "[t]he heart of a contract is the inten-tion of the parties as determined from its language, purposes, and subject matter and the situation of the parties at the time of execu-tion." *McDonald v. Medford*, 111 N.C. App. 643, 647, 433 S.E.2d 231, 234 (1993).

Despite the use of language in the subject contract calling for a "servicing of accounts," all of plaintiff's clients were to become defendants' clients after a set date essentially leaving plaintiff with-

out an accounting practice. Undisputedly, plaintiff's desire to retire prompted the agreement between the parties. The record contains a copy of defendants' check for the first installment payment under the agreement bearing the notation "1st check—buyout of practice." The record also contains a memo, initialed by all the parties, entitled "Items To Be Considered In Takeover Of Mr. Starling's Practice." In short, the evidence in the record shows that the parties intended the agreement to be a sale of plaintiff's accounting practice. We therefore find that the trial court correctly interpreted it as such.

II.

[2] Defendants next contend that there are disputed facts between the parties regarding plaintiff's compliance with the contract. They argue that they have not received the benefit of their bargain because *all* of plaintiff's clients did not become their clients. We disagree.

The agreement called for defendants to start servicing plaintiff's clients on 1 November 1994. The agreement further required that plaintiff cooperate in "introducing clients and assisting [defendants]." The record indicates that in October 1994, plaintiff wrote letters to all of his clients informing them that he would be retiring and turning his accounting practice over to another certified public accounting firm, Still & Company, which would be servicing their accounts in the future. Manifestly, the defendants must have understood that plaintiff had no authority to guarantee that his former clients would remain with defendants. While we appreciate that defendants were disappointed with the number of clients that they were able to retain, "[a] court cannot grant relief from a contract merely because it is a hard one." *Durant v. Powell*, 215 N.C. 628, 633, 2 S.E.2d 884, 887 (1939).

Defendants next argue that there is a genuine issue of material fact concerning whether plaintiff violated the contract's non-compete provision. "It has been said that a genuine issue is one which can be maintained by substantial evidence." *Kessing v. Mortgage Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971). Since an examination of the record reveals no evidence to support defendants' allegation, it cannot serve as a basis for summary judgment.

Lastly, defendants argue that there is a dispute as to whether plaintiff fulfilled his contractual obligation to "cooperate in introducing clients and assisting [defendants] to cause the servicing to be as smoothly [sic] as possible." However, the record does not support such an argument.

The uncontroverted evidence in the record shows that plaintiff introduced defendants to his clients by letter indicating that Still & Company would now be servicing their accounts. When defendants wrote to plaintiff proposing an adjustment to the parties' payment arrangements because they had been unsuccessful in retaining as many clients as they had hoped, plaintiff responded, "David, I will be happy to help you all I can to keep my old accounts, but in view of the fact that I am not in the insurance business, I am unprepared to make any adjustment on our agreement." Moreover, David Still gave the following testimony regarding a reception the parties had discussed to personally introduce plaintiff's clients to defendants:

A. We thought that would be cumbersome and would not be in the best interest of the client or, in my judgment looking back at my experience with my own clients, I don't think that we could assure that would be a harmonious group of clientele because we didn't know. So we felt like it would be better to have a one-on-one before we even thought about that kind of thing. And we finally concluded that in most likelihood that it would be to our advantage to do one-on-one with Al and these clients. But that never materialized.

Q. But you never asked him to bring any of these people in to see you on a one-on-one basis?

A. It never worked that way. No, because, for some reason, it just got put on the back burner both by Al and by us as being something that we would like to do but never did materialize.

  . . . .

Q. You never asked him to bring in a single client to talk to you?

A. Not specifically.

  . . . .

Q. But he never refused to contact anybody that you asked him?

A. Not to my knowledge. No, never did.

Since our examination of the record indicates no genuine issue of material fact concerning plaintiff's compliance with the contract, we conclude that the trial court appropriately granted summary judgment for plaintiff. Accordingly, we affirm the trial court's order.

### III.

[3] Defendants lastly contend that the trial court erred by imposing damages of $28,500, the balance of the entire amount due under the contract, in the absence of an acceleration clause. We agree.

Plaintiffs argue that they were entitled to the remainder of the purchase price since defendants, by their actions, repudiated the entire contract. However, this Court addressed a similar argument in *Roberts Co. v. Mills, Inc.*, 8 N.C. App. 612, 175 S.E.2d 289 (1970). We noted:

> Plaintiff's argument in this respect is that the contract was in effect repudiated by defendant, and for that reason judgment should have been rendered for the entire contract price. However, the contract sued upon by the plaintiff was in writing and obligated the defendant to pay the purchase price . . . only in monthly installments. There was no acceleration clause making the entire contract price due in event defendant should default in paying any monthly installment. "In the absence of such a provision for acceleration, a failure to pay some of the installments entitles the creditor to recover only the amount of the unpaid installments."

*Id.* at 619, 175 S.E.2d at 293. Thus, while "[t]he general rule is that an anticipatory repudiation will give rise to an action for total breach of the contract . . . this rule does not apply in the case of repudiation of an installment contract which contains no acceleration clause." *Taylor v. Taylor Products, Inc.*, 105 N.C. App. 620, 626, 414 S.E.2d 568, 575 (1992), *overruled on other grounds by Brooks v. Giesey*, 334 N.C. 303, 318, 432 S.E.2d 339, 347 (1993). Where there is no acceleration clause and the contract price is to be paid in installments, "the aggrieved party is not entitled to immediately sue for the total amount of the contract, but must wait until each installment becomes due." *Id.*

Under the terms of the contract in the instant case, defendants were to pay $30,000 in twenty quarterly payments of $1,500. Defendants made only the first installment and plaintiffs brought suit when defendants refused to tender the second installment when it came due. Since the contract contains no acceleration clause, plain-- tiff was only entitled to recover the amount of the unpaid installment. Therefore, the trial court erred by imposing damages of $28,500, the entire amount due under the contract. Accordingly, we reverse and

remand to the trial court for entry of an award of damages consistent with this opinion.

Affirmed in part, reversed in part and remanded.

Judges LEWIS and MARTIN, Mark D. concur.