WAL-MART STORES, INC., Plaintiff v. INGLES MARKETS, INCORPORATED,
E.H. PROPERTIES, L.P., and HORNE PROPERTIES, INC., Defendants

No. COA02-896

(Filed 17 June 2003)

**Deeds— restrictive covenant—lease agreement—radius restriction—use of land as grocery store**

The trial court did not err by granting summary judgment in favor of plaintiff store based on its conclusion that although the restrictive covenant in a 1991 deed created a real covenant running with the parking lot tract of land transferred to plaintiff thus barring plaintiff's use of that tract for a grocery store, the restrictive covenant did not impose upon plaintiff the five-mile radius restriction to which defendant landlord agreed in its negotiated commercial lease with defendant company operating a grocery store, because: (1) Memorandum § 6 in the commercial lease contained personal covenants of the landlord, and the landlord honored its personal covenant by including in the 1991 deed a restrictive covenant stating that the parking lot tract sold to plaintiff was conveyed subject to a condition that plaintiff would comply with Memorandum § 6; (2) the restrictive covenant in the 1991 deed did not impose upon plaintiff the landlord's personal covenant not to operate a grocery store anywhere within five miles of the shopping center; and (3) the restrictive covenant did not impose an implied equitable servitude upon land subsequently purchased by plaintiff.

Appeal by defendants from judgment entered 19 March 2002 by Judge Sanford L. Steelman, Jr., in Stanly County Superior Court. Heard in the Court of Appeals 27 March 2003.

*Smith, Debnam, Narron, Wyche, Story & Myers, L.L.P., by Bettie Kelley Sousa and Ashley H. Story, for plaintiff-appellee.*

*Hunton & Williams, by Matthew P. McGuire, and Hartman, Simons, Spielman & Wood, by David L. Pardue, for defendant-appellant Ingles Markets, Inc.*

*Robinson, Bradshaw & Hinson, P.A., by D. Blaine Sanders, for defendant-appellant E.H. Properties, L.P.*

**WAL-MART STORES, INC. v. INGLES MKTS., INC.**

[158 N.C. App. 414 (2003)]

LEVINSON, Judge.

Defendants (Ingles Markets, Inc., and E.H. Properties, L.P.) appeal from an order granting summary judgment in favor of plaintiff (Wal-Mart Stores, Inc.). For the reasons discussed below, we affirm the trial court.

The factual and procedural background may be summarized as follows: In 1987, defendant Ingles leased space in the Stanly County Shopping Plaza (the shopping center), in Albemarle, for operation of a grocery store. Ingles and defendant Horne, then the owner of the shopping center, executed a lease setting out the terms of the rental. An abbreviated Memorandum of Lease (Memorandum) was subsequently recorded in Stanly County. Memorandum § 6 set out a radius restriction by which the landlord (then defendant Horne) generally promised not to occupy, rent, or sell property for use as a grocery store either in, or within five miles of, the shopping center. In 1991, plaintiff bought a small section of the shopping center parking lot (the parking lot tract) from defendant Horne. This tract did not include any of the property that Ingles rented for its grocery store, and plaintiff did not become Ingles' landlord. The deed for the parking lot tract included a restrictive covenant requiring plaintiff to "comply with the terms, covenants, and restrictions" of § 6 of the memorandum. Plaintiff did not sign the deed.

About ten years later, plaintiff began planning construction of a large Wal-Mart Supercenter, in which plaintiff planned to include a grocery department. The property plaintiff acquired for this project was not identified in the 1987 lease between Ingles and Horne, nor in the 1991 deed of the parking lot tract. Further, the proposed Supercenter property was not located in the shopping center, although it was within five miles of the shopping center. In June, 2001, plaintiff wrote defendants asking them to acknowledge that the provisions of the 1991 deed for the parking lot tract would not prohibit or restrict its planned Supercenter. Defendants would not agree to this, and on 4 September 2001, plaintiff filed a complaint seeking a declaratory judgment that its planned Supercenter would not violate the restrictive covenant in the 1991 Horne/Wal-Mart deed. Plaintiff's complaint named three defendants: Ingles, Horne, Inc., and E.H. Properties, L.P. (E.H.), Horne's successor in interest and Ingles' landlord.

On 15 November 2001, defendant Ingles filed a motion for summary judgment. E.H. joined Ingles' motion for summary judgment on

27 November 2001. Plaintiff filed its own motion for summary judgment on 19 November 2001. On 19 March 2002, the trial court entered summary judgment for plaintiff. The court's order stated in relevant part that:

> 3. The covenants contained in the deed from Horne Properties, Inc. to Wal-Mart Stores, Inc. dated October 4, 1991, . . . do create a valid, enforceable covenant, running with the land, which prohibits the plaintiff, Wal-Mart Stores, Inc. from using any portion of the lands conveyed in that deed for a term of twenty years commencing on April 21, 1987 for [the sale of groceries]. . . . This covenant is enforceable by the defendant, Ingles Markets, Incorporated. 4. The covenants in the deed from Horne Properties, Inc. to Wal-Mart Stores, Inc., dated October 4, 1991, . . . do not create a valid, enforceable covenant that would prohibit the plaintiff, Wal-Mart Stores, Inc., from operating a "Supercenter" containing a grocery store, on a tract of land (other than the property described in [the 1991 deed]) located within five miles of the Stanly County Plaza Shopping Center.

From this order, defendants E.H. and Ingles have appealed. Defendant Horne did not respond to the complaint, and has not appealed the trial court's summary judgment order.

## Standard of Review

Defendants appeal from the entry of summary judgment. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2001). In the instant case, each party claims entitlement to summary judgment based on its proposed interpretation of the terms of the same documents: the 1987 Horne-Ingles lease, the 1987 Horne-Ingles Memorandum of Lease, and the 1991 Horne/Wal-Mart deed. Thus:

> [e]ach party based its claim upon the same sequence of events. . . . Neither party has challenged the accuracy or authenticity of the documents establishing the occurrence of these events. Although the parties disagree on the legal significance of the established facts, the facts themselves are not in dispute. Consequently, we conclude that 'there is no genuine issue as

to any material fact' surrounding the trial court's summary judgment order.

*Adams v. Jefferson-Pilot Life Ins. Co.*, 148 N.C. App. 356, 359, 558 S.E.2d 504, 507, *disc. review denied*, 356 N.C. 159, 568 S.E.2d 186 (2002). " 'A deed is to be construed by the court, and the meaning of its terms is a question of law, not of fact.' " *Elliott v. Cox*, 100 N.C. App. 536, 538, 397 S.E.2d 319, 320 (1990) (quoting *Mason v. Andersen*, 33 N.C. App. 568, 571, 235 S.E.2d 880, 882 (1977)); *see also Alchemy Communications Corp. v. Preston Dev. Co.*, 148 N.C. App. 219, 222, 558 S.E.2d 231, 233, *disc. review denied*, 356 N.C. 432, 572 S.E.2d 421 (2002) (plaintiff's claim that defendant violated lease presented "a matter of contract interpretation and thus, a question of law") (citing *Harris v. Ray Johnson Constr. Co., Inc.*, 139 N.C. App. 827, 534 S.E.2d 653 (2000)).

We conclude that "there is no genuine issue as to any material fact" surrounding the trial court's summary judgment order. Rule 56(c). We next consider whether the trial court correctly determined that plaintiff is entitled to a judgment as a matter of law.

The central issue presented in this appeal is the proper construction of the restrictive covenant in the 1991 deed to the parking lot tract. Defendants contend that the restrictive covenant imposes upon plaintiff the radius restriction found in Memorandum § 6, thus prohibiting plaintiff from operating a grocery or food store within five miles of the shopping center. We disagree.

The restrictive covenant in the 1991 deed states in relevant part:

The property conveyed hereby has been transferred *subject to* the following covenants running with the land: (i) The Grantee and any person(s) or entity hereinafter owning or leasing an interest in the Property *shall comply with the terms, covenants, and restrictions found in Section Six (6) of the Memorandum of Lease* . . . between Ingles Markets, Incorporated and the Grantor. . . .

(emphasis added). Thus, the question before us is the correct interpretation of plaintiff's agreement to "comply with the terms, covenants, and restrictions found in Section Six (6) of the Memorandum of Lease."

The memorandum was authorized by a provision in the lease allowing either party to prepare and record a "short form

or memorandum of this Lease in a form acceptable to Tenant[.]" Memorandum § 6, referenced in the restrictive covenant, states in pertinent part:

> 6. The lease provides that during its term, *Landlord covenants and agrees not to lease*, rent, *occupy, or suffer or permit to be occupied, any part of the Shopping Center or any other area* owned or controlled, . . . by Landlord, its successors, heirs or assigns, or Landlord's principal owners, stockholders, directors, or officers, or their assignees (hereinafter sometimes referred to as the "Owners"), which is *within five (5) miles* of the Shopping Center *for the purpose of* conducting therein or for use as, *[a] supermarket, [or] food store*, . . . and *further*, that *if Landlord* or Owners *own any land, or* hereinafter during the term of the Lease Landlord or Owners *acquire any land within such distance* of the Shopping Center, *neither will convey the same* (other than the Wal-Mart Premises as defined in the Lease) *without imposing thereon a restriction* for a period of twenty (20) years *which secures compliance with the terms of the Lease.* This Section 6 shall not be applicable to the portion of the Shopping Center to be purchased by Wal-Mart Properties, Inc.

(emphasis added).

Preliminarily, we observe that Memorandum § 6 states broadly that any property sold by the landlord within five miles of the shopping center will be conveyed subject to a restrictive covenant "which secures compliance with the terms of the Lease." Taken literally, the restrictive covenant in the 1991 deed stating that the property was conveyed "subject to" compliance with Memorandum § 6 would require plaintiff to, *e.g.*, maintain the shopping center's common areas, purchase fire insurance, or pay rent on the Ingles property, all of which are "terms of the lease." We conclude that § 6 is written so expansively that it cannot be read at face value. We are, therefore, required to determine the meaning of Memorandum § 6 by reference to established principles of contract interpretation.

"A lease is a contract which contains both property rights and contractual rights." *Strader v. Sunstates Corp.*, 129 N.C. App. 562, 570, 500 S.E.2d 752, 756, *disc. review denied*, 349 N.C. 240, 514 S.E.2d 274 (1998). Thus, the provisions of a lease are interpreted according to general principles of contract law. *See Martin v. Ray Lackey Enterprises*, 100 N.C. App. 349, 354, 396 S.E.2d 327, 330 (1990) ("the interpretation of an assignment [of a lease] is governed by rules ap-

plicable to the interpretation of a contract") (citing 3 Williston on Contracts § 431 (3d ed. 1960)). Further, "[t]he terms of a lease, like the terms of any contract, are construed to achieve the intent of the parties at the time the lease was entered into." *Lexington Ins. Co. v. Tires Into Recycled Energy And Supplies, Inc.*, 136 N.C. App. 223, 225, 522 S.E.2d 798, 800 (1999), *disc. review denied,* 351 N.C. 642, 543 S.E.2d 872 (2000) (citation omitted). In so doing, the lease " 'should be interpreted as a whole and the meaning gathered from the entire contract, and not from particular words, phrases, or clauses.' " *Starling v. Still*, 126 N.C. App. 278, 281, 485 S.E.2d 74, 76 (1997) (quoting *Divine v. Watauga Hospital*, 137 F. Supp. 628, 631 (M.D.N.C. 1956)). Moreover,

> it is proper to seek for a rational purpose in the language and provisions of the [lease], and to construe it consistently with reason and common sense. . . . [W]e should reject that interpretation which plainly leads to injustice, and adopt that one which conforms more to the presumed meaning, because it does not produce unusual and unjust results.

*Meroney v. Cherokee Lodge*, 182 N.C. 739, 746, 110 S.E.2d 89, 92 (1921). In addition, "[t]he heart of a contract is the intention of the parties as determined from its language, purposes, and subject matter and the situation of the parties at the time of execution." *McDonald v. Medford*, 111 N.C. App. 643, 647, 433 S.E.2d 231, 233 (1993) (citation omitted).

With these principles in mind and reading Memorandum § 6 as a whole, we conclude that § 6 states personal covenants of the landlord, whereby landlord promises that during the term of the lease it will (1) not *occupy* a competing grocery store in, or within five miles of, the shopping center; (2) not lease to, or permit occupancy by, any grocery store on land it owns or acquires in, or within five miles of, the shopping center; and (3) that any property conveyed by the landlord in, or within five miles of, the shopping center will be conveyed subject to a restrictive covenant barring its use as a grocery store.

These covenants are only one part of the mutual consideration between Ingles and the landlord, which includes "two useful devices of radius clauses and percentage rent. Percentage rent . . . was developed for the protection of both parties from losses incurred because of fluctuations in the economy over the term of the lease. As a necessary corollary, the [lessor may] rel[y] upon a radius clause so that the tenant is prevented from having a site too close to the shopping

center which would necessarily pull customers away from the shopping center site and reduce the percentage rent that would ordinarily be payable." *Winrock Enter. v. House of Fabrics of N.M.*, 91 N.M. 661, 663, 579 P.2d 787, 789 (1978). Radius restrictions also protect the lessee. *See Dan's Super Market, Inc. v. Wal-Mart Stores, Inc.*, 38 F.3d 1003, 1005 (8th Cir. 1994) ("the broad purpose of this covenant . . . was to permit the sale of the restricted lots to a discount store operator, while affording the store to be built by [Dan's] protection from a grocery sales competitor").

Thus, we agree with defendants' contention that the inclusion of radius restrictions is an accepted commercial practice in the negotiation of shopping center leases. "Radius restrictions serve a legitimate business purpose." *Winrock Enter.*, 91 N.M. at 663, 579 P.2d at 789. "The development of new shopping centers requires tremendous outlays of venture capital and risk by prospective tenants as well as by landlords; restrictive covenants against unwanted competition are consistent with the public interest in such development." *Valley Properties, Inc. v. King's Dept. Stores, Etc.*, 505 F. Supp. 92, 95 (D.C. Mass. 1981) (citing *Parker v. The Lewis Grocery Co.*, 246 Miss. 873, 153 So. 2d 261 (1963)). Moreover, to be meaningful, a radius restriction must effectively prevent a landlord from evading its terms by leasing or selling land to a lessee's competitor, while continuing to collect rent from the lessee. *See id.* ("landlord's promise binds him for the duration of the lease[;]" the Court holds that landlord "may not avoid that obligation by [purchasing] . . . land within the restricted area after the lease is signed"). However, our general acceptance of radius restrictions does not resolve the issue of whether the radius restriction in Memorandum § 6 applies to plaintiff by virtue of the restrictive covenant in the 1991 deed for the parking lot tract. To do so, we must examine the nature of the landlord's covenants in Memorandum § 6. A restrictive covenant is defined as a " 'private agreement, usually in a deed or lease, that restricts the use or occupancy of real property, especially by specifying lot sizes, building lines, architectural styles, and the uses to which the property may be put.' " *Hutchens v. Bella Vista Vill. Prop. Owners' Ass'n*, 82 Ark. App. 28, 35, 110 S.W.3d 325, 329 (2003) (quoting BLACKS LAW DICTIONARY 371 (7th ed. 1999)). Restrictive covenants may be either real or personal:

> Covenants that run with the land are real as distinguished from personal covenants that do not run with the land. . . . Three essential requirements must concur to create a real covenant: (1) the

**WAL-MART STORES, INC. v. INGLES MKTS., INC.**

[158 N.C. App. 414 (2003)]

intent of the parties as can be determined from the instruments of record; (2) the covenant must be so closely connected with the real property that it touches and concerns the land; and, (3) there must be privity of estate between the parties to the covenant.

*Raintree Corp. v. Rowe*, 38 N.C. App. 664, 669, 248 S.E.2d 904, 907-08 (1978) (citing 20 Am. Jur. 2d Covenants, Conditions, Etc. § 30 (1965)). The distinction between real and personal covenants is that "a personal covenant creates a personal obligation or right enforceable at law only between the original covenanting parties, . . . whereas a real covenant creates a servitude upon the land subject to the covenant ('the servient estate') for the benefit of another parcel of land ('the dominant estate')[.]" *Runyon v. Paley*, 331 N.C. 293, 299, 416 S.E.2d 177, 182 (1992) (citing *Cummings v. Dosam, Inc.*, 273 N.C. 28, 32, 159 S.E.2d 513, 517 (1968)). Further, in analyzing whether a covenant is real or personal, "[t]he instrument must be construed most favorably to the grantee, and all doubts and ambiguities are resolved in favor of the unrestricted use of the property." *Stegall v. Housing Authority*, 278 N.C. 95, 100, 178 S.E.2d 824, 828 (1971).

We conclude that Memorandum § 6 contained personal covenants of the landlord. Plaintiff has never been Ingles' landlord, and is not subject to the personal covenants found in the lease. These personal covenants, standing alone, do not place restrictions on the use of any specific property; rather, the landlord personally promises to apply certain restrictions during the term of the lease to property it owns or acquires, as one part of the contract negotiated between Ingles and its landlord. The landlord honored its personal covenant by including in the 1991 deed a restrictive covenant stating that the parking lot tract was conveyed subject to a condition that plaintiff would "comply with" Memorandum § 6.

We further conclude that the restrictive covenant in the 1991 deed, construed with Memorandum § 6, creates a real covenant running with the property transferred in the deed to the parking lot tract, which bars its use as a grocery or food store. Thus, the trial court was correct when it interpreted the restrictive covenant in this manner.

We reject defendant's argument that the restrictive covenant in the 1991 deed also imposed upon plaintiff the landlord's personal covenant not to operate a grocery store anywhere within five miles of the shopping center. "[Defendant] seeks to construe the lease clause in isolation. It ignores the fact that the instrument containing the clause is itself a commercial lease agreement." *Reagan Nat.*

*Advertising v. Capital Outdoors*, 96 S.W.3d 490, 493 (Tex. App. 2002). The language of the restrictive covenant in the 1991 deed does not indicate that plaintiff agreed to a five mile radius restriction, any more than it agreed to keep the common area grass mowed, the property insurance current, or any of the landlord's other obligations under the lease. Nor would such a restriction fall within the original purpose of the radius restriction, which was to establish the *landlord's* obligation not to allow grocery store competition, *in exchange for* the income it would receive in the form of rental payments. Thus, " 'when the benefit and burden of a contract are inseparably connected, both must go together, and liability to the burden is a necessary incident to the right to the benefit.' " *Reed v. Elmore*, 246 N.C. 221, 227, 98 S.E.2d 360, 365 (1957) (quoting *Raby v. Reeves*, 112 N.C. 688, 16 S.E. 760 (1893)).

We also disagree with defendants that the restrictive covenant imposed an implied equitable servitude upon land subsequently purchased by plaintiff for use as a Supercenter. *See Harry v. Crescent Resources, Inc.*, 136 N.C. App. 71, 80, 523 S.E.2d 118, 124 (1999) ("We have not adopted the doctrine of implied equitable servitudes in North Carolina.").

We conclude that the trial court correctly determined that the restrictive covenant in the 1991 deed created a real covenant running with the land transferred in the deed, and barred plaintiff's use of that tract for a grocery store. We further conclude that the trial court correctly determined that the restrictive covenant did not impose upon plaintiff the five mile radius restriction to which landlord agreed in its negotiated commercial lease with Ingles. Accordingly, the trial court's order is

Affirmed.

Judges McGEE and McCULLOUGH concur.