STEELMAN, Judge.
Plaintiff, FAZ of RTP, LLC, appeals the trial court's dismissal of its complaint against defendant and the judgment awarding damages, interest, attorney's fees, and costs to defendant arising out of plaintiff's breach of a commercial lease agreement. For the reasons discussed herein, we affirm the trial court.
I. Background
On 21 July 1997 Van Groce, (Groce), the principal owner of Allendown, and Dale Osborne, (Osborne), the principal owner of FAZ, entered into an agreement to develop and operate Fazoli's restaurants in North Carolina. Groce formed 55 & Allendown, LLC to construct a Fazoli's restaurant, and Osborne formed FAZ of RTP, LLC to operate the Fazoli's restaurant. On 29 April 1998, plaintiff and defendant entered into a commercial lease, under the terms of which defendant would construct the building and plaintiff would lease and operate a Fazoli's restaurant in Durham, North Carolina. The lease provided that annual rent would be based upon a percentage of the costs of construction of the restaurant, with the monthly rent to be no more than the income of the restaurant less certain agreed upon expenses. At the end of each year adjustments would be made to conform the rent actually paid to the amount due under the lease.
Plaintiff also entered into a "management agreement" with D & D Management of Fayetteville, Inc., a Kentucky corporation of which Osborne was a principal owner, and which was to provide supervision and oversight of the day-to-day operations of the restaurant. Among other things, D & D was to provide plaintiff "with the services customarily provided in the management of a restaurant," which included accounting, staffing, maintenance, banking, and maintaining insurance for the restaurant. Even though plaintiff had an agreement with D & D to provide accounting services, it also hired the accounting firm of Switzer, McGaughey & Co. of Lexington, Kentucky to perform accounting services. The lease agreement specifically provided that the payments to D & D were to be considered an expense of operating the restaurant for purposes of computing the rent.
Plaintiff opened the Fazoli's restaurant in Durham on 10 November 1998 and paid rent pursuant to the terms of the lease. After several months, the parties determined the rent formula provided in the lease was unfair to defendant, so the parties amended their arrangement on 10 February 1999. The original agreement provided that rent would be based upon plaintiff's "net taxable income" as defined in the lease. The amendment modified this provision so that rent was based upon "net operating income" rather than "net taxable income." "Net operating income" was defined to exclude "amortization, depreciation or other standard adjustments normally deducted from net operating income to achieve taxable income." The lease agreement provided for a maximum monthly rental of $10,650.00.
The restaurant was profitable from the time it opened in November 1998 through October 2000, and plaintiff paid the maximum monthly rent. Since the restaurant was paying the maximum rent, there was no controversy as to the calculation of the amount of rent due under the lease. When business began to decline towards the end of 2000 through October 2001, defendant requested financial information from plaintiff, Osborne, and Switzer McGaughey. Mr. McGaughey was the CPA responsible for plaintiff's account. Upon investigation, defendant concluded that plaintiff was not paying the appropriate amount of rent due under the lease. A controversy developed between the parties as to the proper calculation of rent under the terms of the lease, the amendment, and the management agreement.
On 26 June 2001, Switzer McGaughey sent a letter to Groce, indicating it had calculated rent to be overpaid in the amount of $21,153.82 through 30 April 2001, but indicated to defendant that plaintiff did owe rent in the amount of $4,948.09 for May 2001, and issued a check to defendant in that amount. On 28 September 2001, defendant sent a letter to plaintiff, notifying them that Fazoli's was in default under the lease and it intended to pursue remedies as provided in the lease.
On 5 October 2001, Groce sent Osborne another letter, informing him that he still considered plaintiff to be in arrears on its rental obligation and he was going to start seeking other tenants for the property. In response to this letter, Osborne, on behalf of plaintiff, sent defendant a check for $5,402.38, which he contended paid the rent in full for the month of August 2001.
On 29 April 2002, Groce went to the Fazoli's restaurant in Durham and gave written notice of eviction to the on-site manager. Mr. Groce then closed the restaurant and changed the locks, intending to retake possession of the premises. The restaurant was closed for approximately two-and-a-half hours before plaintiff reopened the restaurant. After closing the restaurant, Groce, on behalf of defendant, filed a summary ejectment proceeding in the district court of Durham County. Defendant subsequently dismissed that action when plaintiff filed this suit and obtained a temporary restraining order, which allowed plaintiff to remain in possession of the premises and continue to operate the restaurant. The restraining order was continued in effect through the date of trial in this matter by consent of the parties. Plaintiff made no rental payments to defendant during the course of this litigation.
This matter was heard by the Superior Court of Durham County at the 4 December and 19 December 2002 sessions of court. The case was tried by Judge Stanback, sitting without a jury. The trial court found plaintiff was in default under the terms of the lease for failure to pay rent as provided in the lease. The court entered judgment in favor of defendant for $35,941.00 in back rent, together with interest, costs, and attorney's fees. The trial court declared that defendant was entitled to the immediate possession of the restaurant in Durham. Plaintiff appeals.
II. Issue
The sole issue before this Court is whether the trial court erred in its conclusion that plaintiff failed to pay rent as provided in the lease and amendment, and was thus in default under the terms of those documents.
III. Standard of Review
Where a judgment is rendered under the declaratory judgment act, our standard of review is the same as in other cases. Finch v. Wachovia Bank & Tr. Co., 156 N.C.App. 343, 346, 577 S.E.2d 306, 308 (2003); N.C. Gen.Stat. § 1-258 (2003). Thus, where a declaratory judgment action is heard without a jury, the court's findings of fact will be deemed conclusive on appeal if supported by competent evidence, regardless of whether there exists evidence to the contrary. Finch, 156 N.C.App. at 347, 577 S.E.2d at 308-09. If neither party objects to a finding of fact made by the trial court, "the finding is presumed to be supported by competent evidence and is binding on appeal." Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). However, conclusions of law are fully reviewable on appeal; Teasley v. Beck, 155 N.C.App. 282, 288, 574 S.E.2d 137, 141 (2002), disc. review denied, 357 N.C. 169, 581 S.E.2d 755 (2003); as are mixed questions of law and fact. Taylor v. Cone Mills, 306 N.C. 314, 320, 293 S.E.2d 189, 193 (1982). Plaintiff contends the trial court made numerous findings of fact that constitute conclusions of law or conclusions regarding mixed questions of law and fact. The designation of "finding of fact" or "conclusion of law" is not conclusive and we will examine each appropriately. See Brown v. Charlotte-Mecklenburg Board of Education, 269 N.C. 667, 670, 153 S.E.2d 335, 338 (1967).
IV. Analysis
This is a case of contract interpretation. The parties entered into several agreements regarding the operation of the restaurant. A dispute arose as to the proper method of computing rent under these agreements. Plaintiff contends the trial court erred in interpreting the rent provisions contained in the original agreement between Osborne and Groce, the lease, and the amendment.
A. Expert Witness
Plaintiff contends the trial court erred in accepting the testimony of defendant's expert accountant, Mr. Willoughby, and rejecting the testimony of plaintiff's expert accountant, Mr. McGaughey, on the issue of the amount of rent due under the lease and amendment. Plaintiff contends its expert was the better qualified expert and the trial court should have accepted Mr. McGaughey's analysis.
The testimony of expert witnesses is governed by Rule 702 of the North Carolina Rules of Evidence. N.C. Gen.Stat. § 8C-1, Rule 702 (2003). The trial court is granted wide latitude in applying Rule 702, and its decision will not be reversed absent an abuse of discretion. State v. Youngs, 141 N.C.App. 220, 228, 540 S.E.2d 794, 800 (2000), appeal dismissed, disc. review denied, 353 N.C. 397, 547 S.E.2d 430 (2001). Furthermore, the trial judge is the sole arbiter of credibility and also determines the weight to be given to the evidence. Fox v. Fox, 114 N.C.App. 125, 134, 441 S.E.2d 613, 619 (1994). The judge may reject the testimony of any witness in whole or in part. Id. We discern no abuse of discretion on the part of the trial court in accepting the testimony of Mr. Willoughby and rejecting that of Mr. McGaughey.
B. "Taxable Income"
Further, plaintiff contends that in computing the amount of rent due under the lease, the trial court was required to use "taxable income" as shown on plaintiff's tax returns prepared by Mr. McGaughey, and not "taxable income" as shown on plaintiff's financial statements used by Mr. Willoughby in his calculations.
The terms of a lease are to be interpreted in accordance with the general principles of contract law. Wal-Mart Stores, Inc. v. Ingles Mkts., Inc., 158 N.C.App. 414, 418, 581 S.E.2d 111, 115 (2003). "Further, `the terms of a lease, like the terms of any contract, are construed to achieve the intent of the parties at the time the lease was entered into.' "Id. at 419, 581 S.E.2d at 115 (citation omitted)." `When the language of a contract is plain and unambiguous, its construction is a matter of law for the court.'" Southpark Mall Ltd. Part. v. CLT Food Mgmt., Inc., 142 N.C.App. 675, 679, 544 S.E.2d 14, 17 (2001) (citations omitted).
The original lease agreement provided that the amount of annual rent would be 10.875% of the final cost of constructing the leased premises, and would be paid in equal monthly installments. However, the lease also provided that if the "net taxable income" of plaintiff was less than 10.875% annually, then the rent owed would be the amount of the "net taxable income." "Net taxable income" was defined "to include the total income of Lessee in a calendar year less all expenses before taxes of Lessee in operating the restaurant on the Premises, said expenses including a supervisory fee to D & D Management of Fayetteville, Inc. of $2,916.66 per month." On 10 February 1999 the parties amended the original agreement between Osborne and Groce. The amendment provided:
1. All references in the Agreement to lease payments being based upon taxable income are hereby revised from "taxable income" to "net operating income exclusive of any amortization, depreciation or other standard adjustments normally deducted from net operating income to achieve taxable income."
The trial court found the amendment to the original agreement between Groce and Osborne "also served to amend the Commercial Lease." This finding was unchallenged by plaintiff on appeal and is thus binding on this Court.
None of the agreements state that "taxable income" is to be derived from a specific line on plaintiff's tax returns. Rather, the agreements of the parties clearly show they intended to craft their own definition of "taxable income" and not be bound by a technical definition found in the Federal Internal Revenue Code. Thus, the trial court did not err in computing the rent using "taxable income" based on plaintiff's financial statement rather than information contained in plaintiff's tax returns. The approach adopted by the trial court gave effect to the intent of the parties as manifested in their written agreements.
C. Double Accounting
Plaintiff contends the trial court erred in rejecting its expert accountant's calculation of rent owed, and that the court's finding on this question was unsupported by the evidence.
After the initial two months of the lease, the amount of rent was to be calculated with reference to the "net taxable income" for the month that was two months prior to the month for which the rent was being computed. In computing "net taxable income" for the month two months prior to the month for which the calculation was made, plaintiff sought to reduce "taxable income" by the amount of rent paid to defendant during that month. The trial court found this method of accounting improper because it "double counted" the rent payment as rent expense and prepaid rent. To calculate rent using plaintiff's method, one would determine the "net operating income" for the month beginning two months prior to the current month. If net operating income was $10,000.00 for the month two months prior to the current month (exclusive of rent paid) and rent was paid in the amount of $8,000.00, plaintiff asserts that the $8,000.00 rental payment would then be deducted from net operating income for that month, yielding a rent payment of $2,000.00 for the current month. The trial court rejected this approach and ruled the rent paid in the month two months prior to the current month should not be used to reduce "net operating income" in determining the amount of rent due for the current month.
We find plaintiff's proposed method of calculating the rent due contradicts the parties' intent for the rent to be based on "net income." We find there is evidence in the record to support this finding of the trial court, and this finding in turn supports the trial court's conclusion of law.
D. Accounting Fees
Plaintiff contends the trial court erred in concluding that the $700.00 per month in accounting fees paid by plaintiff to Switzer McGaughey should not be considered as an expense for purposes of computing the rent due under the lease agreement. The trial court made the following findings of fact, which plaintiff does not contest on appeal:
12. FAZ of RTP entered into a management agreement with D & D Management of Fayetteville, Inc. which was in full force and effect during all times relevant to this dispute. D & D Management is owned primarily by Dale Osborne. Among other things, the management agreement between FAZ of RTP and D & D Management requires D & D to "provide FAZ with services customarily provided in the management of a restaurant, including ... accounting. D & D shall keep all accounts and supervise all audits and bookkeeping and submit monthly statements to FAZ showing the details of the restaurant's operation."
20. The Court finds as fact that Mr. Osborne's entity D & D Management was responsible for providing accounting services for FAZ of RTP.
33. D & D Management is paid $2916.66 per month pursuant to the terms of the Lease and the Management Agreement and part of these payments to D & D are for the purpose of providing accounting services for this restaurant.
Each of these unchallenged findings are binding on appeal. Koufman, 330 N.C. at 97, 408 S.E.2d at 731. In addition, the court made the following findings of fact and conclusions of law, which are challenged by plaintiff on appeal:
[Findings of Fact:]
31. The Plaintiff offered into evidence and presented testimony from Mr. McGaughey concerning his calculation of this rent dispute through July 1, 2002. The Plaintiff's rent analysis is summarized in Plaintiff's Exhibit 11. The Court rejects this analysis for the following reasons:
A. It allows the Plaintiff to claim monthly accounting fees as an expense which it deducts from the rental obligation. Pursuant to the Management Agreement and Lease, D & D Management is obligated to provide accounting services and is not entitled to deduct accounting expense in calculating rent.
36. As of August 31, 2002 the Plaintiff owed the Defendant $35,941.00 in back rent. The Court finds Mr. Willoughby's analysis consistent with the agreements between the parties for the following reasons:
A. He correctly excluded accounting fees from the rent calculation.
[Conclusion of Law:]
3B. The Plaintiff is not entitled to deduct accounting fees... from its obligation to pay rent pursuant to the terms of the Lease and Management Agreement.
The lease agreement specifically provided that the supervisory fee to D & D in the amount of $2,916.66 per month was to be considered as an expense for purposes of computing the amount of rent. Plaintiff contends that in addition to the $2,916.66, that they were entitled to treat $700.00 per month paid to Switzer McGaughey as an expense for rent computation purposes. The trial court's findings that the management agreement required D & D to provide accounting services were unchallenged. Further, we find the challenged findings are supported by evidence in the record, even though there may be evidence to the contrary, and are binding on this court. Even if findings of fact Nos. 31A and 36A do contain conclusions of law, as asserted by plaintiff, we hold that they too are supported by the trial court's findings.
It is a cornerstone of contract interpretation that parties' agreements should be construed as a whole and the meaning garnered from the entire contract and not just from particular words, phrases, or clauses. Wal-Mart, 158 N.C.App. at 419, 581 S.E.2d at 115. Applying these principles, the trial judge interpreted the intent of the parties and correctly held that accounting services were part of the D & D agreement and that plaintiff was not entitled to take an additional $700.00 as accounting expenses for purposes of computing rent under the lease agreement.
E. Legal Fees
Plaintiff contends the trial court erred in concluding that over $20,000.00 in legal fees incurred by plaintiff in litigating this rent dispute should not be considered as an expense for purposes of computing the rent due under the lease agreement. The trial court made the following findings of fact and conclusions of law pertaining to this issue:
[Finding of Fact:]
31D. As shown by Plaintiff's August and September 2002 Financial Statements, it has expensed for rent purposes amounts in excess of $20,000.00 related to this rent litigation. The plaintiff is not entitled to claim such litigation expenses as expense for rental calculation purposes and again illustrates its efforts to find ways to avoid paying rent to the Defendant.
32. The language in the lease dated April 29, 1998 pertaining to expenses "in operating the restaurant on the premises" is not mere surplusage and was specifically included to limit expenses deducted for rent calculation purposes to expenses incurred on the premises of the restaurant such as the cost of food, utilities and labor. It was not the intent of the parties to allow the Plaintiff to deduct any and all expenses of any kind as an expense for rent calculation purposes. This is highlighted by the Plaintiff's effort to deduct the cost of this litigation as an expense for rent purposes.
[Conclusion of Law:]
3B. The Plaintiff is not entitled to deduct ... litigation expenses from its obligation to pay rent pursuant to the terms of the Lease and Management Agreement.
Plaintiff challenged both of these findings of fact and the conclusion of law on appeal. As to the findings of fact, plaintiff contends that both findings No. 31 and 32, are in fact conclusions of law, and also that there was insufficient evidence to support finding of fact No. 31.
The trial court was required to determine the intent of the parties at the time they entered into the lease. Wal-Mart, 158 N.C.App. at 419, 581 S.E.2d at 115. Judge Stanback found that the words "in operating the restaurant on the premises" contained in paragraph 2 of the lease agreement, were not mere surplusage and evidenced an intent of the parties to limit expenses used to calculate the rent to those incurred on the premises. While the evidence on this issue was sharply conflicting, there is evidence in the record to support this finding. Paragraph 2 of the lease specifically recognized that sums paid to D & D were to be included in the expenses considered in computing the rent. If plaintiff's interpretation of paragraph 2 was correct, then this language would have been unnecessary. There being evidence to support this finding, it is binding upon this Court on appeal. To the extent that these findings were actually conclusions of law, we find that they were supported by the findings of fact found by the trial court. Furthermore, the trial court correctly applied the law regarding contract interpretation as previously cited in Wal-Mart. We hold that the trial judge interpreted the intent of the parties and correctly held that the legal fees should not be considered as an expense for purposes of rent computation.
V. Conclusion
We find the trial court did not err in concluding that plaintiff was in default on the lease. This assignment of error is without merit.
AFFIRMED.
Judge TIMMONS-GOODSON concurs.
Judge CALABRIA dissents.