IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-607

Filed: 4 September 2018

Durham County, Nos. 10 CVS 4392, 12 CVS 3945

NNN DURHAM OFFICE PORTFOLIO 1, LLC; et al., Plaintiffs,

v.

GRUBB & ELLIS COMPANY; GRUBB & ELLIS REALTY INVESTORS, LLC; GRUBB & ELLIS SECURITIES, INC.; NNN DURHAM OFFICE PORTFOLIO, LLC; AND NNN REALTY ADVISORS, INC., Defendants.

NNN DURHAM OFFICE PORTFOLIO 1, LLC; et al., Plaintiffs,

v.

HIGHWOODS REALTY LIMITED PARTNERSHIP; HIGHWOODS DLF 98/29, LLC; HIGHWOODS DLF, LLC; HIGHWOODS PROPERTIES, INC.; GRUBB & ELLIS / THOMAS LINDERMAN GRAHAM; and THOMAS LINDERMAN GRAHAM INC., Defendants.

Appeal by Plaintiffs from order entered 3 January 2017 by Chief Business Court Judge James L. Gale in Durham County Superior Court, and cross-appeal by Defendants from order entered 3 January 2017 by Chief Business Court Judge James L. Gale in Durham County Superior Court. Heard in the Court of Appeals 6 March 2018.

*Stark Law Group, PLLC, by Thomas H. Stark and Seth A. Neyhart, for Plaintiff-Appellants.*

*Parker Poe Adams & Bernstein LLP, by Charles E. Raynal, IV, Jamie S. Schwedler, and Catherine R.L. Lawson, for Defendant-Appellees Grubb & Ellis Company and Grubb & Ellis Securities, Inc.*

NNN Durham Office Portfolio I, LLC v. Grubb & Ellis Company.

*Opinion of the Court*

*Harris Sarratt & Hodges, LLP, by John L. Sarratt, for Defendant-Appellees Grubb & Ellis Realty Investors, LLC, NNN Durham Office Portfolio, LLC and NNN Realty Advisors, Inc.*

*Pnery Riemann, PLLC, by J. Anthony Penry for Appellant – NNN Durham Office Portfolio 1, LLC, et al.*

*North Carolina Department of Secretary of State, by Enforcement Attorney Colin M. Miller, for amici curiae, the North Carolina Secretary of State and the North American Securities Administration Association, Inc.*

DILLON, Judge.

I. Summary

Plaintiffs are entities and individuals who invested in a commercial real property transaction. Defendants are entities who marketed the investment and managed the property.

Years later, when the parties lost one of their main tenants and the real property struggled to generate sufficient income to meet expenses, Plaintiffs sought to remove Defendants as the property managers. To settle the matter, the parties entered into an agreement ("Settlement Agreement") whereby Defendants agreed to step aside as property managers and Plaintiffs agreed to waive all claims they may have had against Defendants.

The real property continued to struggle generating sufficient cash flow to cover all expenses, including debt service, which led to a loan default; and the lender

NNN Durham Office Portfolio I, LLC v. Grubb & Ellis Company.

*Opinion of the Court*

eventually foreclosed. Thereafter, Plaintiffs commenced this action seeking damages against Defendants. Defendants moved for summary judgment on all claims. After a hearing on the matter, the trial court entered an order dismissing *most*, but not all, of Plaintiffs' claims. Both parties appealed.

We conclude that the trial court should have disposed *all* of Plaintiffs' claims, based on the Settlement Agreement. We, therefore, affirm in part and reverse in part.

## II. Background

In 2006, an affiliate of Highwoods Properties, Inc., ("Highwoods") owned certain income-producing office buildings in Durham (the "Property"). The Property's primary tenants and a sub-tenant were affiliates of Duke Hospital ("Duke"). Duke's lease terms were all set to expire by 2010, and Duke was not ready to commit on extending the lease terms beyond 2010. Highwoods, therefore, decided to market the property for sale while Duke had several years remaining on its lease terms.

Defendants entered into an agreement with Highwoods to purchase the Property.[1] Defendants' intent in doing so was to remarket the Property to small investors who had recently sold other property and were in the market for a qualified

---

[1] For purposes of clarity, I refer to Defendants collectively throughout this opinion, though they each played different roles. For instance, one contracted with Highwoods to purchase the Property, another acted as a broker who solicited investors, and another served as the Property's manager. However, because of our resolution of this matter, it is not important to go into greater detail of what *each* Defendant's role was in the matter.

NNN DURHAM OFFICE PORTFOLIO I, LLC v. GRUBB & ELLIS COMPANY.

*Opinion of the Court*

"worry-free" real estate investment as a vehicle to defer tax on capital gains. Before closing, Defendants sought investors to participate in the purchase of the Property. Specifically, Defendants offered an investment vehicle (the "Security") which offered investors tenant-in-common interests in the Property along with Defendants' services to manage the investment.

In early 2007, Defendants successfully found investors, which included Plaintiffs. Defendants then closed on the purchase of the Property from Highwoods. The purchase from Highwoods was funded in great part with money collected from Plaintiffs and lender financing. Per the assignment provision in the purchase contract between Defendants and Highwoods, Defendants instructed Highwoods to convey the Property at closing directly to a number of entities, including Plaintiffs, as tenants-in-common.

Several months later, in late 2007, Duke informed Defendants that it would not be renewing most of its leases. And in 2010, Duke moved out of the majority of its space in the Property, causing cash flow issues for Defendants and Plaintiffs.

As the cash flow issues progressed, Plaintiffs sought to have Defendants replaced as the property managers. Defendants resisted. But on 25 March 2010, Plaintiffs and Defendants entered the Settlement Agreement, whereby Defendants agreed to step aside as the Property managers and whereby Plaintiffs agreed to release claims that it may have against Defendants.

NNN Durham Office Portfolio I, LLC v. Grubb & Ellis Company.

*Opinion of the Court*

In 2012, the Property continued to struggle producing sufficient cash flow, which resulted in a default of the loan. The lender foreclosed, and the Property was sold to a third party at foreclosure at a loss to Plaintiffs.

Plaintiffs commenced this action against Defendants. In a separate action, Plaintiffs sought damages from Highwoods and Highwoods' broker. In both actions, Plaintiffs allege that Defendants and Highwoods separately failed to make certain disclosures around the time of the purchase in 2007 regarding Duke's activities which tended to lessen the likelihood that Duke would seek to renew its leases in 2010. The trial court entered orders dismissing some of the claims against Defendants in this action and all of the claims against Highwoods in the other action.

In 2017, both matters were brought up on appeal to our Court. The appeal of the trial court's dismissal of Plaintiffs' claims against Highwoods is addressed in a separate opinion.

This present appeal addresses the trial court's decision to dismiss most, but not all, of Plaintiffs' claims against Defendants. Plaintiffs appealed, and Defendants cross-appealed.

## III. Appellate Jurisdiction

Before addressing the merits, we must first consider our appellate jurisdiction since this appeal is interlocutory in nature. While the trial court has disposed of *most* of the claims asserted by Plaintiffs, it denied Defendants' request to dismiss claims

NNN Durham Office Portfolio I, LLC v. Grubb & Ellis Company.

*Opinion of the Court*

brought under North Carolina securities law by the five Plaintiffs domiciled in North Carolina (the "NC Securities Claims").

Generally, we do not have jurisdiction to consider an appeal from an interlocutory order unless the appellant meets its burden of demonstrating to our Court how the order appealed from affects a substantial right *or* that the order has been properly certified for immediate appeal by the trial court pursuant to Rule 54(b) of our Rules of Civil Procedure. *See* N.C. Gen. Stat. § 1-277; N.C. Gen. Stat. § 1A-1, Rule 54(b). Otherwise, we generally do not have jurisdiction unless we choose in our discretion to grant a petition for a writ of *certiorari*.

Here, no party has made any argument that a substantial right has been affected. The trial court has properly certified for immediate review all of the claims that were dismissed, but the trial court did not certify for immediate review the NC Securities Claims, which were not dismissed. Therefore, based on the trial court's Rule 54 certification, we have appellate jurisdiction only over the claims that were dismissed, but not over the NC Securities Claims.

We note that no party has filed a petition requesting that we grant a writ of *certiorari* to review the NC Securities Claims. On our motion, however, we hereby issue a writ of *certiorari* "to aid in our own jurisdiction" to consider Plaintiffs' NC Securities Claims as well. N.C. Gen. Stat. § 7-27(c) (General Assembly granting to the Court of Appeals jurisdiction "to issue prerogative writs . . . in aid of its own

NNN DURHAM OFFICE PORTFOLIO I, LLC V. GRUBB & ELLIS COMPANY.

*Opinion of the Court*

jurisdiction, or to supervise and control the proceedings of any of the trial courts"). We do so in the interests of judicial economy as our legal reasoning which resolves the other claims and also resolves the NC Securities Claims.

### IV. Analysis

Having determined that we have jurisdiction over this appeal, we address the merits.

The trial court dismissed most of Plaintiffs' claims, but *not* based on the Settlement Agreement in which Plaintiffs purportedly agreed to release Defendants from all claims related to the Property. Regarding the Settlement Agreement, the trial court expressly held that the Settlement Agreement did not bar Plaintiffs from pursuing the remaining claims against Defendants. Based on Section 2.4 of the Settlement Agreement, which is discussed below, we conclude that *all* of Plaintiffs claims against Defendants should have been dismissed.

In March 2010, Plaintiffs and Defendants entered into the Settlement Agreement, whereby Defendants agreed to step aside without a fight if Plaintiffs agreed to release Defendants from any potential claims relating to the Property. The obligations in the Settlement Agreement, however, were not instantaneous, but the Agreement allowed Plaintiffs a due diligence period, until 2 July 2010, to decide whether they were willing to release Defendants from all claims. Specifically, Section 2.4 of the Settlement Agreement provided (1) that Plaintiffs had until 2 July 2010 to

NNN DURHAM OFFICE PORTFOLIO I, LLC V. GRUBB & ELLIS COMPANY.

*Opinion of the Court*

"assert" any claims that it wished to exclude from the operation of the release; (2) that if Plaintiffs elected to retain the right to assert certain claims, then Defendants could elect to back out of their promise to resign as Property managers; and (3) that if Plaintiffs did not duly assert any claims by 2 July 2010, then all potential claims of Plaintiffs against Defendants would be released, and Defendants would be obligated to complete the steps necessary to step aside as Property managers.

On 1 July 2010, the day prior to Plaintiffs' deadline under Section 2.4 to assert claims, Plaintiffs commenced this action by filing a Summons with the trial court pursuant to Rule 3 of our Rules of Civil Procedure, which allowed Plaintiffs an additional 20 days to file their complaint.[2]  In their Summons, Plaintiffs described the nature of the claims they planned to assert in their complaint.

Importantly, though, Plaintiffs did not notify Defendants of the Summons or otherwise of their intent to assert claims by the 2 July 2010 deadline.  Rather, based on the record and the findings of the trial court, Defendants did not become aware of Plaintiffs' intention until they received a copy of the Summons on 12 July 2010, which Plaintiffs had mailed five days earlier on 7 July 2010.

The issue raised in this appeal is whether Plaintiffs properly "asserted" claims under Section 2.4 of the Settlement Agreement by simply commencing the action by 2 July 2010 *or* whether under Section 2.4 Plaintiffs were required also to notify

---

[2] Rule 3 allows a party to commence an action by filing a summons and requesting permission to file the complaint within 20 days.  N.C. Gen. Stat. § 1A-1, Rule 3.

NNN DURHAM OFFICE PORTFOLIO I, LLC v. GRUBB & ELLIS COMPANY.

*Opinion of the Court*

Defendants of their intent by 2 July 2010 to exclude claims they wished to assert from the operation of the release. The language of Section 2.4 states as follows:

> It is acknowledged that the release provisions contained in Paragraph 2.1 and 2.2 are subject to and conditioned upon the absence of any claims by [Plaintiffs] asserted against [Defendants] prior to July 2, 2010[.] [Plaintiffs] shall have until [July 2, 2010] to conduct such inquiries and investigations as they may determine to be necessary and appropriate . . . to determine whether or not they have a viable claim against [Defendants].
>
> Should [Plaintiffs] discover such a claim, they shall give written notice to [Defendants] of such claim (an "Excluded Claim") prior to [July 2, 2010], including the description of the basis of such claim in reasonable detail,
>
> and
>
> they shall commence an action or arbitration proceeding with regard to such Excluded Claim prior to [July 2, 2010].
>
> Should [Plaintiffs] duly and timely assert an Excluded Claim prior to [July 2, 2010] . . . the [release] shall be void and of no force and effect with respect to the Excluded Claim . . . [.][3]

Plaintiffs argued to the trial court (and argue here on appeal) that Plaintiffs met their contractual obligations "to assert an Excluded Claim" under the Settlement Agreement simply by filing the Summons which commenced this action by 2 July 2010, without providing any notice by 2 July 2010 to Defendants. Defendants argued to the trial court (and argue here on appeal) that Plaintiffs could only properly

---

[3] This paragraph in the actual Settlement Agreement is a single block paragraph. It is broken up in this opinion for ease of reading.

NNN Durham Office Portfolio I, LLC v. Grubb & Ellis Company.

*Opinion of the Court*

"assert" a claim by *both* commencing their action *and* notifying Defendants in writing of their intent to exclude claims from the reach of the release.

The trial court concluded that Section 2.4 was ambiguous and, therefore, that the provision should be read "restrictively" against Defendants, such that Section 2.4 "effectively precluded the release from becoming effective once Plaintiffs initiated their action on July 1, 2010," notwithstanding that Plaintiffs did not give Defendants any notice until after 2 July 2010.

In reviewing the trial court's interpretation, we are mindful of a court's role in construing contract language:

> Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution. If the plain language is clear, the intention of the parties is inferred from the words of the contract. Intent is derived not from a particular contractual term but from the contract as a whole.

*State v. Philip Morris*, 363 N.C. 623, 631-32, 685 S.E.2d 85, 90 (2009) (citations omitted).

We have reviewed Section 2.4 in context with the entire agreement, and we disagree with the trial court's interpretation that Section 2.4 did not require Plaintiffs to notify Defendants of their intent to exclude claims by the 2 July 2010 deadline. Reading the contract as a whole, based on its plain language, we conclude that the parties intended that Plaintiffs were required *both* to file their action *and* separately

NNN Durham Office Portfolio I, LLC v. Grubb & Ellis Company.

*Opinion of the Court*

to notify Defendants of such claims, all by the 2 July 2010 deadline, to preserve any claims that they did not want to release. Each requirement served different purposes.

Under the terms of the Settlement Agreement, Plaintiffs were required to file their action by 2 July 2010 to avoid any claim from being barred by the applicable statute of limitations. That is, under another provision of the Settlement Agreement, Defendants agreed that all applicable statute of limitations with respect to any potential claims would be tolled from the date of the agreement in March 2010 until 2 July 2010, while Plaintiffs conducted their due diligence. The requirement that a lawsuit be filed clarified that statutes of limitations would be tolled indefinitely for any claims which Plaintiffs wished to assert, but that they would only be tolled until 2 July 2010.

The "notice" requirement – that Plaintiffs provide actual notice to Defendants of any claims by 2 July 2010 – served a different purpose. Specifically, the Settlement Agreement contemplated that during Plaintiffs' due diligence period, Defendants would allow Plaintiffs' chosen Property manager to manage the Property on a subcontract basis and that Defendants would also work with Plaintiffs in obtaining the required lender approval for the change in management. The last portion of Section 2.4 of the Settlement Agreement provided that Defendants would have the right to cease these efforts and terminate the subcontracts with Plaintiffs' chosen manager *if* Plaintiffs elected to assert claims. If Plaintiffs were not required to give

NNN Durham Office Portfolio I, LLC v. Grubb & Ellis Company.

*Opinion of the Court*

notice by 2 July 2010 that they intended not to release Defendants from all claims, then the provision in Section 2.4 relieving Defendants of their obligation under the Settlement Agreement to step aside as Property managers in such case could be rendered meaningless; Defendants could not enforce this right unless they knew Plaintiffs had decided not to grant a full release. As described below, under Plaintiffs' interpretation, Plaintiffs could have withheld notice for many months until after Defendants had completed the process of stepping aside as Property managers.

But first, we note that a plain reading of Section 2.4, when read in context of the whole Settlement Agreement, supports our interpretation. This Section describes 2 July 2010 as the "Effective Date of Release," at which time Plaintiffs' release of all potential claims against Defendants would become effective under the Settlement Agreement.

The first sentence of Section 2.4 states that the release would be effective unless Plaintiffs "asserted" claims against Defendants by "2 July 2010 (the "Effective Date of Release")."

The second sentence states that Plaintiffs would be allowed to conduct due diligence until the Effective Date of Release to determine if they wanted to assert claims.

The third sentence is the key sentence, which states *how* Plaintiffs were required to "assert" claims that they wished to exclude from the operation of the full

NNN DURHAM OFFICE PORTFOLIO I, LLC v. GRUBB & ELLIS COMPANY.

*Opinion of the Court*

release. This third sentence is a single compound sentence and required that Plaintiffs "shall give written notice to [Defendants] prior to the Effective Date of Release, and they shall commence an action or arbitration [] prior to the Effective Date of Release."

The fourth sentence then states that "[s]hould [Plaintiffs] duly and timely assert an Excluded Claim prior to the Effective Date of Release[,]" then the provisions of the full release "shall be void and of no force and effect with respect to the Excluded Claim" and further Defendants could cancel the subcontracts with Plaintiffs' chosen Property manager.

In sum, we conclude that a plain reading of this Section required that to "duly and timely assert" a claim, Plaintiffs had to notify Defendants *and* file their action by 2 July 2010.

Based on Plaintiffs' (and the trial court's) interpretation of Section 2.4 – where Plaintiffs could duly "assert" a claim by simply commencing an action without otherwise notifying Defendants by 2 July 2010 – Plaintiffs could have waited until Defendants had stepped aside as Property managers to notify Defendants of this lawsuit. For instance, under Plaintiffs' and the trial court's interpretation, Plaintiff could have waited until 22 July 2010 to file their Complaint (pursuant to the 20-day extension provided in Rule 3). And then Plaintiffs could have waited *at least* until September 2010 to serve their Summons/Complaint on Defendants. In fact, by taking

NNN Durham Office Portfolio I, LLC v. Grubb & Ellis Company.

*Opinion of the Court*

advantage of Rule 4(d) of our Rules of Civil Procedure, Plaintiffs could have kept Defendants in the dark about their intentions well into 2011 by extending the Summons or suing out successive alias and pluries summonses. In other words, based on Plaintiffs' interpretation, it would have been possible that Defendants have completed their agreement to fully step aside as Property managers and that Plaintiffs' chosen manager would have fully been in place as manager without Defendants ever having any knowledge that Plaintiffs still intended to assert claims against them.

It may be argued that time was not of the essence with regard to the 2 July 2010 deadline. In other words, if time was not of the essence with respect to the 2 July 2010 date, Plaintiffs had a reasonable time after 2 July 2010 to provide the written notice to Defendants. However, Plaintiffs failed to make any such argument either to the trial court or on appeal to our Court. Therefore, any argument that time was not of the essence is waived. N.C. R. App. P. 28.

But assuming that the argument was preserved, we believe that time *was* of the essence and 2 July 2010 was a hard deadline. Section 2.4 of the Settlement Agreement, which essentially provided Plaintiffs with a unilateral option to exclude claims from the reach of the release, is similar to an option contract to purchase real estate. In an option contract, the potential buyer pays consideration for the "option," but not the obligation, to purchase certain real estate at a specified price if exercised

NNN DURHAM OFFICE PORTFOLIO I, LLC V. GRUBB & ELLIS COMPANY.

*Opinion of the Court*

by a specified date. And our Supreme Court has stated that time is automatically of the essence as to the option date in such contracts. *See Ferguson v. Phillips,* 268 N.C. 353, 355, 150 S.E.2d 518, 520 (1966) ("Options being unilateral in their inception are construed strictly in favor of the maker, because the other party is not bound to performance[.]"). Similarly, under the Settlement Agreement, Plaintiffs were given the unilateral option to back out of its obligation to release Defendants from all claims. They could simply notify Defendants that they did not want to release claims. Defendants, on the other hand, did not have the option to back out unilaterally. Rather, they could only do so if Plaintiffs first decided to back out.

Additionally, we believe that the Settlement Agreement, when read as a whole, otherwise suggests that the parties intended for 2 July 2010 to be of the essence. Specifically, the Settlement Agreement provided that the statutes of limitations regarding any potential claims would not be tolled beyond 2 July 2010. And, as our Supreme Court has recognized, "[s]tatutes of limitations are inflexible and unyielding. They operate inexorably without reference to the merits of [a] plaintiff's cause of action." *Pearce v. N.C. Highway*, 310 N.C. 445, 451, 312 S.E.2d 421, 425 (1984).

We note Plaintiffs' brief contains an argument that Defendants waived the "notice" requirement contained in Section 2.4 of the Settlement Agreement based on Defendants' "previous position that their own obligations under the Settlement

NNN Durham Office Portfolio I, LLC v. Grubb & Ellis Company.

*Opinion of the Court*

Agreement had been voided under this same language in Section 2.4." In support of their argument, Plaintiffs cite to statements made by an employee during the course of this litigation and quote *McDonald v. Medford*, 111 N.C. App. 643, 648, 433 S.E.2d 231, ___ (1993) that "[w]here parties, through their actions, have placed a practical interpretation on their contract after executing it, the courts will ordinarily give it that construction[.]" However, Plaintiffs do not state what "actions" Defendants took to indicate that they were voiding their obligations under Section 2.4. They do not point to anything in the record which suggests that Defendants attempted to step back in as Property managers once they became aware of this lawsuit. And the trial court did not make any findings to that effect. On the contrary, in their Answer, Defendants expressly assert that all Plaintiffs' claims had been settled and released by virtue of the Settlement Agreement. Accordingly, we conclude that Plaintiffs have failed to demonstrate from the record that a genuine issue of material fact exists that Defendants waived the notice provision contained in Section 2.4 of the Settlement Agreement.

## V. Conclusion

We conclude that all of Plaintiffs claims against Defendants concerning the Property are barred by operation of the Settlement Agreement. The trial court, though, only granted Defendants' motion for summary judgment in part, allowing the NC Securities Claims to proceed. Therefore, we affirm in part and reverse in part the

NNN DURHAM OFFICE PORTFOLIO I, LLC V. GRUBB & ELLIS COMPANY.

*Opinion of the Court*

trial court's order.  We remand that matter to the trial court with instructions to enter judgment in favor of Defendants on all claims asserted by Plaintiffs.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

Judges BRYANT and TYSON concur.